AIR CONDITIONING INCORPORATED, ET AL V.
HARRISON - WILSON - PEARSON

No. A-3774. Decided December 3, 1952.
Rehearing overruled December 31, 1952.
(253 S. W., 2d Series, 422.)

636


*Johns, Herring & Jones, Hart, Brown & Sparks,* and *Jack Sparks,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that as a matter of law respondents (real estate agents) were the procuring cause of the sale of petitioners' land to the purchasers, Watermans. Goodwin v. Gunter, 109 Texas 56, 185 S.W. 295; Parkey v. Lawrence, 248 S. W. 283; Aukerman v. Bremer, 209 S. W. 261.

*Davis L. Tisinger,* of Austin, for respondents.

The facts establish that the respondents were the procuring cause of the sale and entitled to the broker's commission as a matter of law. Dismukes v. Gilmer, 286 S.W. 495; Eldridge v. Usry & Zollner, 273 S.W. 624; Shook v. Parton, 211 S.W. 2d 368.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is a suit instituted by Harrison-Wilson-Pearson, respondents, against Air Conditioning, Inc., et al., petitioners, for a real estate commission. The Austin Court of Civil Appeals has affirmed the judgment of the trial court, rendered on an instructed verdict in favor of the real estate dealers. 250 S. W. 2d 274.

The facts are set out in detail in the opinion of the Court of Civil Appeals, but will be summarized briefly here. Petitioners are contractors, to whom the lot and building in question were transferred when the former owners were unable to pay for labor and materials furnished in the erection of the building. Wishing to dispose of the real estate promptly, petitioners listed it at $115,000 with several real estate agents, including respondents, about the middle of February, 1949. Respondents showed the property to Dr. S. F. Waterman, who expressed some interest in it. On February 18, 1949, a conference was held between petitioners, respondents, and Waterman, at which no offer was made, although Waterman inquired whether petitioners would take $110,000. On February 28, 1949, respondents transmitted to petitioners Waterman's offer of $100,000, which was rejected. On the same day petitioners instructed respondents to make a counteroffer of $110,000. Respondents did so, but no reply was made by Waterman. Respondents arranged a conference with Waterman on March 5, 1949, which he cancelled. Petitioners, who constantly expressed a desire to make a sale as quickly as possible, then instructed respondents to offer the property at $107,500, and if that would not be accepted within twentyfour hours, then to offer it at $105,000. At respondents' suggestion, petitioners executed written, exclusive twenty-four hour listings for these two offers, which were to be shown to Waterman in an effort to impress him that the property would not be available at that price indefinitely. These written listings were never shown to Waterman, but on March 8, 1949, respondents did communicate the $107,500 offer to him; which he took under consideration, but did not accept within twenty-four hours after it was made. Respondents never did make the offer of $105,000. There were no further dealings between respondents and Waterman.

Throughout the whole course of these negotiations, up to March 8, 1949, Waterman was in frequent contact with Frank Knight, a loan broker. On February 26, 1949, Knight informed Waterman that he had secured a loan commitment for $60,000. Waterman requested Knight to keep the commitment open, and to see if he could get an additional loan. Knight had also been

in touch with respondents, and, after they had expressed to him doubt that the property could be sold to Waterman, Knight said that he could effect the sale if respondents would withdraw; to which respondents made no definite reply. Knight notified petitioners that he had secured an additional $10,000 loan commitment for Waterman, and they in turn notified respondents, but they did not so inform Waterman.

On March 9 and 10, 1949, petitioners and respondents discussed the matter, the former expressing disappointment over the delay in making the sale. On March 11, 1949, petitioners notified respondents that they were withdrawing the property from sale, and on the same day petitioners asked Knight to attempt to sell the property to Waterman. Knight arranged a conference with Waterman, at which Knight informed him that the property was available for $105,000; that an additional loan of $10,000 was available; and that he would obtain tenants for the vacant second floor of the building if Waterman bought the property. On March 14, 1949, Knight again conferred with Waterman concerning taxes, income from the building, and other matters concerning the property, and on that day a contract of sale for $105,000 was executed.

Both the trial court and the Court of Civil Appeals held that, as a matter of law, the respondents were the procuring cause of the sale, and that there were no ultimate issues of fact for the jury.

Petitioners contend that they were entitled to an instructed verdict; or, in the alternative, that there were ultimate fact issues which should have been submitted to the jury. The principal points presented here are substantially as follows:

The Court of Civil Appeals erred in holding, as a matter of law,

(1) That respondents were the procuring cause of the sale of petitioners' land to the Watermans.

(2) That the ultimate issue of the rightfulness or wrongfulness of the termination of respondents' employment was immaterial.

(3) That the employment of respondents was wrongfully terminated by petitioners.

(4) That respondents were diligent in procuring the sale; or, in the alternative, that the issue of respondents' diligence was immaterial.

(5) That respondents were not given a reasonable time within which to sell petitioners' property; or, in the alternative, that the issue of reasonable time was immaterial.

(6) That the written listings were effective and enforcible as written memorandums after four o'clock P. M. on March 8, 1949.

1 The testimony shows that during the twenty-four hours period respondents did not carry out the instructions of petitioners; that they did not offer the property to the Watermans for $105,000; did not exhibit the written listings to the Watermans; did not tell them that their authority expired after twenty-four hours; and did not inform the Watermans that the $10,-000 loan was available to them. At the end of the twenty-four hour period respondents told petitioners that the property had been offered to the Watermans for $107,500, but that such offer was not acceptable to them. The testimony further shows that petitioners instructed respondents to immediately offer the property to the Watermans for $105,000, and to make known to them that the additional $10,000 loan was available. Respondents failed to comply with these instructions.

Dr. Waterman and Roswell Waterman testified that Frank Knight sold the property to them. Frank Knight testified that he sold the property to the Watermans. Petitioners also testified that Knight sold the property to the Watermans and that they paid Knight the commission because he had accomplished what they sought. Under the evidence in this case, the issue as to who was the procuring cause of the sale to the Watermans was one of fact to be determined by the jury. The rule prevailing in this State is stated in 7 Tex. Jur., p. 479, § 82, as follows:

"Although the broker may have been the person who brought the property to the attention of the buyer, or introduced the buyer to the owner, thereby initiating negotiations between them, yet he is not entitled to recover commission where it further appears that, after he had made an unsuccessful effort to induce the buyer to purchase the property and had ceased his efforts to accomplish that result, all without fault on the part of the owner, the sale was then made as the result of independent negotiations directly between the owner and the buyer, or through the medium of some other broker." See Tex. Jur. Supp., p. 582, § 82.

Goodwin v. Gunter, 109 Texas 56, 185 S. W. 295, is the leading authority in this State relative to the rights of a party to

recover a commission for the sale of real estate. Chief Justice Phillips, in rendering the opinion in that case for the Court, said:

"It is a general doctrine that, in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able, and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract, if *while it is in force,* he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right."

**2**  In order for respondents to recover a commisison for the sale of the property involved here it is necessary for them to show that the services rendered by them were the procuring cause of the sale according to the contract while it was in force. The evidence in this case raised certain issues of fact to be determined by the jury.

**3**  The courts of this State have repeatedly held that it is error to instruct a verdict when the evidence raises any material issue. In passing upon the question of the authority of the trial court to instruct a verdict, as was done in this case, the evidence must be considered most favorably in behalf of the party against whom the verdict is instructed. A peremptory instruction is warranted only when the evidence is such that no other verdict should be rendered. If there is any conflicting evidence in the record of a probative nature, a determination of the issue is for the jury. White v. White, 141 Texas 328, 172 S. W. 2d 295; Stevens et al. v. Karr, 119 Texas 479, 33 S. W. 2d 725.

The trial court and the Court of Civil Appeals erred in holding, as a matter of law, that respondents were entitled to an instructed verdict, and therefore such judgments are reversed, and this cause is remanded to the trial court for further proceedings.

Opinion delivered December 3, 1952.

Rehearing overruled December 31, 1952.