Joe F. MABERRY, Appellant,

v.

John E. JULIAN and Julian Enterprises, Inc., a corporation, Appellees.

No. 17836.

Court of Civil Appeals of Texas, Dallas.

March 30, 1972.

Rehearing Denied April 27, 1972.

Douglas J. Brooks, Law Offices of Christopher M. Weil, Dallas, for appellant.

John Fox Holt, Dallas, for appellees.

BATEMAN, Justice.

The appellant Joe F. Maberry sued the appellees John E. Julian and Julian Enterprises, Inc. for a real estate broker's commission. He appeals from a take-nothing summary judgment.

The facts are set forth rather fully in the opinion of the Court of Civil Appeals on a former appeal. See Maberry v. Julian, 456 S.W.2d 234 (Tex.Civ.App., Texarkana 1970, no writ), wherein the appellees' first summary judgment was reversed solely on the ground that there was no summary judgment evidence that the written contract of sale providing for the commission had been terminated.

The contract sued on is dated February 10, 1965. In it Julian agreed to sell and

convey, and Southwest Industrial Properties, Inc. agreed to purchase, a tract of approximately 85 acres owned by Julian. A "fly" or "rider" attached to the contract contained a typewritten paragraph as follows:

"This contract is subject to Purchaser's obtaining a change in zoning on the tract herein being purchased, which zoning change is to be satisfactory to purchaser or at purchaser's option this contract can be terminated and the escrow deposit of $25,000 returned to Purchaser. The closing of this contract is to take place thirty (30) days after the zoning on the above tract is final in every respect."

The contract also contained a paragraph 13 which was printed except for the interlineation in writing of the words "of $18,000.00" and which as thus amended provided:

"Seller agrees to pay to the Real Estate Agent * * * [Maberry] a commission for negotiating this contract, of $18,000.00, * * *. The * * * Agent's right to such commission shall irrevocably vest upon the execution of this contract, notwithstanding any subsequent termination or variation of this contract or any default by Seller or Purchaser, except [naming certain contingencies not relevant hereto]."

Maberry made application to the City Planning Commission for the change in zoning desired by Southwest Industrial Properties, Inc. This was denied and the subsequent appeal to the City Council was withdrawn. Two days later, on July 21, 1965, Maberry wrote Julian a letter stating his understanding that the contract had been terminated "in accordance with the Special Condition covering change in zoning. If such is the case, this is to advise you that you owe us no commission." A few days later Maberry returned to Southwest Industrial Properties, Inc. its check for the earnest money deposit of $25,000

with a letter stating "I am sorry this didn't work out."

The Texarkana Court of Civil Appeals held, on the former appeal, that the above quoted typed provision making the contract subject to the purchaser's obtaining a satisfactory change in the zoning, and giving the purchaser the option to terminate the contract otherwise, had "a controlling influence in this appeal," and that in effect a satisfactory change in the zoning, "unless waived by Southwest Industrial Properties, Inc., was made a condition precedent to performance of the other terms of the contract." The court then held that "the crucial and determinative question in this appeal is: Does the record show as a matter of law that Southwest Industrial Properties Inc., exercised its option to terminate the contract with Julian dated February 10, 1965?"

After the reversal and remand by the Texarkana court, appellees took the oral deposition of Joe T. Fox, who testified that he was then and in 1965 the executive vice president of Southwest Industrial Properties, Inc.; that on or about July 29, 1965 he, on behalf of Southwest Industrial Properties, exercised the right not to purchase the property; that the contract dated February 10, 1965 was not consummated, but was abandoned; that he received his earnest money back and assumed that he had no other rights under the contract; that the contract of February 10, 1965 was terminated in pursuance of the typewritten provision therein; that he and Maberry talked about the matter before Maberry mailed his letter of July 21, 1965 and that that letter expressed the intention of Southwest Industrial Properties, Inc.

Appellees filed their second motion for summary judgment referring to Fox's deposition and attaching Fox's affidavit in which he swore that he had entered into the contract of February 10, 1965 because of the typewritten provision referred to above; that on July 13, 1965, the Planning Commission of the City of Carrollton de-

nied the request for change of zoning; that Southwest Industrial Properties, Inc. exercised its option to terminate the contract because the zoning change was not obtained satisfactory to it as purchaser; that in October, 1967 John Julian entered into another contract with Southwest Industrial Properties, Inc. for the sale to it of the same property, but that Joe F. Maberry was not a party to this contract in any way and that the terms of the contract were entirely different from the terms of the contract of February 10, 1965.

John Julian's affidavit was also attached to the second motion for summary judgment, in which he swore the contract of February 10, 1965 was never consummated but was terminated, and that some two and a half years later he entered into a contract for the sale of the same property to Southwest Industrial Properties, Inc. on entirely different terms and conditions.

Also in evidence was the letter from appellant to John E. Julian dated July 21, 1965, in which appellant states that it is his "understanding" that the contract had been terminated "in accordance with the Special Conditions covering change in zoning," and adding: "If such is the case, this is to advise you that you owe us no commission."

Within the next eight days appellant evidently became convinced that the contract had been actually terminated by Southwest Industrial Properties, for on July 29, 1965 he wrote the letter to Mr. Joe Fox returning the earnest money check for $25,000 and stating, "I am sorry this didn't work out." Appellant offered no opposing evidentiary data.

In the light of appellees' positive and undisputed testimony, we hold that they did show as a matter of law that the contract was terminated by Southwest Industrial Properties, Inc., and that the second motion for summary judgment was properly granted.

Appellant argues under his first three points of error on appeal that the language in paragraph 13 of the contract of February 10, 1965, that "such commission shall irrevocably vest upon the execution of this contract, notwithstanding any subsequent termination," entitled him to receive the $18,000 commission when the contract was signed, notwithstanding subsequent events, and that in any event there were controverted issues of fact in this respect, as well as with respect to appellant's alleged waiver or abandonment of the contract. Appellant also argues that there was a fact issue raised with respect to his being the procuring cause of the sale in 1967.

■ The rules governing this situation are clearly set forth in Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295 (1916), perhaps the leading Texas case on the subject, excerpts from which are:

"It is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if, *while it is in force,* he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced.

\* \* \* \* \* \*

"That the owner, *pending the broker's negotiation,* may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transac-

tion, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced.

\* \* \* \* \* \*

"A different \* \* \* rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, *come to naught, resulting in the failure and termination of his negotiation*; and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker cannot be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account. Pryor v. Jolly, 91 Tex. 86, 40 S.W. 959; Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884." (Italics ours.)

See also Aukerman v. Bremer, 209 S.W. 261, 263 (Tex.Civ.App., Austin 1919, no writ); Hodde v. Malone Real Estate Co., 196 S.W. 347, 350 (Tex.Civ.App., Dallas 1917, writ ref'd), and Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422, 425 (1952).

It appears from the undisputed evidence that the contract of February 10, 1965 was lawfully terminated by the purchaser, that this extinguished appellant's right to a commission, which was agreed to by appellant as reflected by his return of the earnest money deposit. He then had no agreement in writing upon which he could bring an action for a commission. Vernon's Tex.Rev.Civ.Stat.Ann., Art. 6573a, Sec. 28 (1969); Taylor v. Neal, 467 S.W. 2d 197 (Tex.Civ.App., Amarillo 1971, writ dism'd).

Appellant argues also that paragraph 13 of the contract, providing for payment by Julian to Maberry of the commission "for negotiating this contract" and that Maberry's right thereto "shall irrevo-

cably vest upon the execution of this contract, notwithstanding any subsequent termination or variation" of the contract, fixed Julian's liability for the $18,000 commission upon the signing of the contract and that such liability was not contingent upon consummation of the sale. If there is a conflict between these provisions and the typewritten "rider" making the entire contract subject to the buyer's obtaining a satisfactory change of zoning, the "rider" must be held to be controlling, for several reasons.

In the first place, the Texarkana Court of Civil Appeals, on the former appeal, specifically held that "change to satisfactory zoning \* \* \* was made a condition precedent to performance of the other terms of the contract," citing authorities. The parties themselves so construed it. See 13 Tex.Jur.2d, Contracts, § 128, p. 300. Appellant testified in his deposition as follows:

"Q Was it your intention then to receive the $18,000 whether the sale went through or not?

A I will qualify that. It was my intention to receive the commission if the sale went through."

Moreover, in his letter of July 21, 1965 to Julian he stated that if the contract had been terminated "you owe us no commission." Another rule of construction is that if an ambiguity results from apparent inconsistencies between the written or typed portions and the printed portions, the written or typed words will be deemed to be controlling. 13 Tex.Jur.2d, Contracts, § 144, p. 325; Southland Royalty Co. v. Pan American Petroleum Corp., 378 S.W.2d 50, 57 (Tex.Sup.1964); McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344 (1957).

Therefore, we hold that appellees carried the burden imposed upon them by Rule 166–A, Texas Rules of Civil Procedure, of showing that there were no genuine issues as to any material facts and that appellees

were entitled to judgment as a matter of law. Accordingly, appellant's first three points of error are overruled.

■ In appellant's fourth point of error on appeal he complains that some of the documents attached to appellees' motion for summary judgment were not in compliance with "the rules of evidence and the Texas Rules of Civil Procedure." No such objection was leveled at any of appellees' summary judgment evidence in the trial court, and that court had no opportunity to pass upon such objections. They were therefore waived. Rule 90, T.R.C.P.; Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230, 233 (Tex.Sup.1962); see also Lotspeich v. Chance Vought Aircraft, 369 S.W.2d 705, 710–711 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.), and Hall v. Fowler, 389 S.W.2d 730, 733 (Tex.Civ. App., Dallas 1965, no writ).

We are of the opinion that the judgment was correct, and it is therefore affirmed.