John C. RIZZO, Executor of the Estate of Robert Ward, Deceased, Appellant,

v.

Ezekiel FIGURES et ux., Appellees.

No. 16349.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 27, 1974.

Rehearing Denied July 25, 1974.

Ed Keys, Monahans, for appellants.

Lynn B. Griffith, Waxahachie, for appellee.

Gordon A. Holloway, Houston, for appellant; Sewell, Junell & Riggs, Houston, of counsel.

Smith, Schulman, Rawitscher & Cordray, Jack J. Rawitscher, Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit by Ezekiel Figures and his wife, Mary Figures, against John C. Rizzo, Independent Executor of the Estate of Robert Ward, Deceased, for recovery of damages for personal injuries sustained by Ezekial Figures and Mary Figures resulting from an automobile collision.

The trial was before a jury, but the District Court, at the conclusion of all of the evidence, found that Robert Ward was negligent as a matter of law and that as a matter of law his negligence was a proximate cause of the accident made the basis of this suit. The trial court submitted only damage issues to the jury.

The principal issues involved on this appeal are: (1) whether the evidence establishes as a matter of law a violation of a statutory duty constituting negligence per se; (2) whether there is any evidence of a legally acceptable excuse or justification for the violation of such a statute.

The accident made the basis of this suit occurred on December 23, 1970, between an automobile operated by Robert Ward and an automobile driven by Mary Figures, on 610 West, commonly known as the West Loop. Mary Figures was traveling in a southerly direction in the vicinity of the Bellaire overpass. There are four lanes for southbound traffic on the freeway. The Figures automobile was in the third lane from the right driving in a southerly direction. The automobile operated by Ward was in the first lane to the right ahead of the plaintiff, Mary Figures. The weather was fair and the streets were

dry. The road surface at the point where the accident occurred is concrete.

In both paragraph II and paragraph III of their Amended Original Petition, the plaintiffs alleged that Robert Ward was negligent in driving his vehicle in a direction other than the direction designated on sign posts as one-way. The plaintiffs properly alleged facts, which, if established at the trial, would prove a violation of Section 59(b) of Article 6701d, Vernon's Texas Revised Civil Statutes. Hammer v. Dallas Transit Company, 400 S.W.2d 885 (Tex. 1966).

■ The unexcused violation of a legislative enactment which is adopted by the court as defining the standard of conduct of a reasonable man is negligence per se. For one to prove negligence per se, therefore, he must prove (1) a violation of the penal standard, (2) which is unexcused. Southern Pacific Co. v. Castro, 493 S.W.2d 491 (Tex. 1973).

■ It is error to instruct a verdict when the evidence raises any material issue. In passing upon the authority of the trial court to instruct a verdict, the evidence must be considered most favorably in behalf of the party against whom the verdict is instructed. A peremptory instruction is warranted only when the evidence is such that no other verdict should be rendered. If there is any conflicting evidence in the record of a probative nature, a determination of the issue is for the jury. Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422 (1952).

■ An issue of fact is raised if, discarding all adverse evidence and giving credit to all evidence favorable to the losing party and indulging every legitimate conclusion favorable to the losing party which might have been drawn from the facts proved, a jury might have found in favor of the losing party. This is the rule though the evidence may be legally insufficient to support a verdict. Stuckey v. Union Mortgage & Investment Co., 383 S.W. 2d 429 (Tex.Civ.App.—Tyler 1964, ref. n. r. e.).

Mr Figures testified that his attention was attracted to the Ward car when he heard a noise. The next thing he saw the Ward car made a sharp turn to the left. It proceeded across all four lanes of the highway. It struck the esplanade fence and that caused the car to turn back. It then "struck my wife's car about the center, and then on the right side of the car."

Mrs. Figures testified that when she first saw the Ward car it was in the first lane to the right ahead of her about 75 feet. It was turning across the freeway in front of her. It skidded in a circle across the freeway. It went all the way into the fourth lane of traffic and was picking up speed as it was turning. She stated that it made a complete circle and struck her car "from about the center and to the right."

Mr. W. B. Coleman, a graduate engineer, testified that he saw the accident. He was driving in the extreme righthand lane next to the shoulder. Traffic was not extremely heavy. It was just about sundown. He saw the Ward car which was about 75 yards ahead of him. He had just pulled onto the freeway and was approaching an overpass. The Ward car was approaching or on top of the overpass. The Ward car came by him as he was driving up the ramp to get onto Highway 610. It was traveling at about 45 miles per hour. Some 15 seconds after he pulled onto the freeway and was following the Ward car, he observed a line of sparks coming from underneath the lefthand side of the car. After he saw the sparks for about half a second the car started to veer sharply to the left. He saw the sparks for about another half second as the car was veering to the left. When the car reached an angle of some 30 to 45 degrees from him the sparks were no longer visible. As he observed the sparks from an angle he could see that they were coming from the inside of the left front wheel. The car crossed

the lane adjacent to the righthand lane and struck a second car head on in the third lane. The impact drove the Ward vehicle back approximately in the same arc that it had traveled before where it came to stop in the righthand lane. It then lunged forward and came to rest against the guard rail of the overpass. The Figures car stopped upon impact. The Ward car turned in about a 180 degree arc prior to the collision.

The defendant introduced the answer to an interrogatory directed to Mr. Figures which reads:

"We were in the second lane, from the left going south. The vehicle that struck us was in the righthand lane going south. The vehicle made a circle or U-turn in the middle of the freeway. It ended up going the wrong way on a one-way street headed toward us."

The defendant also introduced the answer to an interrogatory directed to Mrs. Figures which contained the same language.

The Ward vehicle was an eight year old Chevrolet. There is no evidence that either party had it examined for defects after the collision. At the time of the collision Mr. Ward was a 74 year old man. He survived the collision but died prior to the trial of the case and we do not have the benefit of his testimony.

Mr. H. E. Benson, a registered professional engineer, was called as an expert witness. In response to a hypothetical question stating the weather conditions, the condition of the street, the testimony concerning the sparks observed by Mr. Coleman and the fact that the Ward car made a 180 degree turn on the four-lane freeway, Mr. Benson stated that he had an opinion as to what caused the automobile to veer to the left. He stated that the sparks indicated a high coefficient of friction over the left front side of the vehicle which would tend to pull the vehicle to the left. This would be a mechanical pulling of the vehicle to the left as opposed to any

human conduct in driving it to the left. On cross-examination he stated:

"I know that if I am looking at a vehicle and one side of that vehicle has sparks and the other doesn't, that tells me that the sparks are a higher coefficient of friction than the rolling friction of just the wheels trying to roll itself, that therefore it will turn to the left."

He also testified:

"I am telling you when sparks started to occur they apparently . . . something failed, apparently, and pretty fast. The man . . . he would have a jerk to the left and the man may not be able to recover from it."

He testified that the fact of the sparks indicated that there was a dragging force, a coefficient of friction between the automobile and the pavement. He also testified that when a car is traveling at 55 miles per hour it would go 60 feet before the driver had a chance to react. He testified, in effect, that the sparking observed was consistent with either defective brakes, a broken tie rod or trouble with the bearings. And that such defects might appear despite proper maintenance. He also testified that other failures could occur including a cracking of the wheel cylinder. He did not know what caused the failure and he had not examined the car.

■ Section 59(b), Article 6701d, Vernon's Annotated Civil Statutes, provides: "Upon a roadway designated and signposted for one-way traffic the driver of a vehicle shall drive only in the direction designated." All of the witnesses testified, in effect, that the Ward vehicle proceeded in a semi-circle from the righthand lane of traffic into the third or fourth lane, or, as one witness testified, made a U-turn. Immediately prior to this happening Ward was observed driving the vehicle in a normal manner. He was the person in control of the motive power of the vehicle. There is no evidence concerning Ward's physical condition or his efforts to control the

movements of the vehicle immediately prior to and during the progress of the vehicle from the righthand lane to the left. The fact that the driver lost control of the vehicle does not establish that no violation occurred. Hammer v. Dallas Transit Company, 400 S.W.2d, page 885 (Tex. 1966); Phoenix Refining Co. v. Powell, 251 S.W. 2d 892 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.).

The evidence strongly suggests that the Ward vehicle was out of control as it made a U-turn on and across a busy freeway prior to the collision. The evidence is sufficient as a matter of law to prove the violation of the statutory standard. It was the defendant's burden to go forward with the evidence and show excuse or justification for the violation. Hammer v. Dallas Transit Company, supra.

■■ There is evidence from which a jury could conclude that Ward was driving his automobile at a prudent speed and that because of an unexpected mechanical failure he lost control of the car. There is no evidence that the resulting emergency was due to his own misconduct. There is some evidence of a legally substantial excuse or justification for the violation of the statute. The burden was on the plaintiff to obtain a finding that the violation was negligence under the common law standard. Hammer v. Dallas Transit Company, supra.

The trial court was in error in determining that there was no evidence of a legally acceptable excuse or justification, and in instructing a verdict on the liability issues. Impson v. Structural Metals, Inc., 487 S. W.2d 694 (Tex. 1972); Antee v. Sims, 494 S.W.2d 215 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref. n. r. e.).

Reversed and remanded.