**STATE of Texas, Appellant,**

v.

**CITY OF GREENVILLE, Appellee.**

No. 05–86–00352–CV.

Court of Appeals of Texas, Dallas.

Dec. 17, 1986.

Rehearing Denied Jan. 28, 1987.

David J. Preister, Austin, for appellant.

Mick McKamie, Greenville, for appellee.

Before WHITHAM, HOWELL and STEWART, JJ.

## ON MOTION FOR REHEARING

STEWART, Justice.

We grant the motion for rehearing of appellee, City of Greenville, and withdraw our opinion of September 30, 1986. The following is now our opinion.

The State of Texas appeals from a judgment of the trial court, complaining that the $5,000 it assessed against the City of Greenville was an insufficient penalty for the City's failure to provide an adequate final cover at its municipal solid waste disposal site. The State contends that the trial court erred in not assessing the statutory minimum civil penalty of one hundred dollars per day as required by statute. In five points of error, the City cross-appeals on the contention that the trial court erred in: (1) rendering judgment for the State based on the jury's finding that the City permitted solid waste to be deposited at the site without providing adequate final cover because there was no evidence, or in the alternative insufficient evidence, to support the finding; (2) rendering judgment for the State based on the jury's finding that the City permitted solid waste to remain without adequate covering for 1,419 days, because there was no evidence to support the finding; (3) admitting into evidence a letter from an individual associated with the City to the Texas Department of Health; and (4) admitting into evidence a series of photographs taken by an employee of the State. We agree with the State's point of error and disagree with the City's points. Consequently, we reverse the trial court's judgment assessing the City's fine at $5,000 and render judgment assessing the City's fine at $141,900, or $100 per day for 1,419 days, in accordance with the jury's findings.

The City of Greenville is a home rule municipal corporation existing and operating under the provisions of Article XI, Section 5, of the Texas Constitution. For some unspecified period of time, the City of Greenville owned and operated a municipal solid waste disposal site located on a county road east of U.S. Highway 69, three miles north of Greenville in Hunt County, Texas.

On December 15, 1983, the State of Texas filed suit against the City of Greenville seeking injunctive relief and civil penalties under the provisions of sections 8(a)(2) and 8(a)(3), article 4477-7, of the Texas Civil Statutes, because the City failed to provide a final cover over its disposal site in accordance with the regulation set forth in 25 Texas Administrative Code, section 325.-150(c)(1). Plaintiff's first amended original petition, filed on May 24, 1985, alleged 1,937 days of violation and the City's engagement in continuing violations. Immediately before trial, the State was allowed a trial amendment to reduce the amount of civil penalties sought to $100 per day and per act of violation. Trial was to a jury, which found that the City of Greenville owned or operated a municipal solid waste site, that the City did not provide a final cover of at least two feet of soil over the entire surface of each completed portion of the fill within thirty days, and that thereafter the City allowed waste to remain without proper cover for 1,419 days. Upon the court's entering judgment for injunctive relief and assessing a civil penalty of $5,000 against the City, both sides appeal.

We will initially consider the City's contentions. In its first and second points of error, the City contends that the trial court erred in rendering judgment for the State based on the jury's answer to the second special issue because there was no evidence, or in the alternative insufficient evidence, to support it. The second special issue reads as follows:

> Do you find from a preponderance of the evidence that the City of Greenville caused, suffered, allowed, or permitted solid waste to be deposited and remain at a municipal solid waste site · in Hunt County, Texas, without providing final cover of at least two feet of soil over the entire surface of each completed portion

of the fill within thirty days, unless inclement weather prevented the application of any cover-over material?

Answer: "Yes" or "No."

ANSWER: <u>yes.</u>

In determining the "no evidence" point, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). There must be more than a scintilla of evidence in support of the jury's findings in order for us to uphold the findings. *Stedman v. Georgetown Savings and Loan Ass'n.*, 595 S.W.2d 486, 488 (Tex.1979).

The record reflects the following facts supporting the jury's answer to the second special issue. On October 8, 1981, the Director of Public Works for the City sent a memorandum to the city manager requesting authorization to advertise bids for labor and equipment necessary to place the required two feet of soil over the closed landfill. By letter dated November 13, 1981, John J. Adkisson of the Public Works Department advised the Texas Department of Health that the City had ceased accepting solid wastes at the landfill on October 12, 1981, and that it placed two tractors at the site on that date to attempt to cover the waste, but it soon determined that "it would be impossible to accomplish a successful closure of the site by January 1, 1982." The City's evidence shows that it let a contract for landfill closure services on November 10, 1981, and that it inspected the site and recommended payment for the closure services sometime prior to January 29, 1982.

In addition, Aubrey C. Anderson, a geologist and sanitarian with the Texas Department of Health, testified that he was responsible for inspection of over a hundred landfills in an eleven-county area; that he first inspected the landfill in question on July 23, 1981, when the weather was warm and dry; and that on that date the site did not comply with the two-foot cover requirement. He also inspected the site on July 28, 1981, accompanied by Mr. Adkisson of the City's Public Works Department. On that date, the weather was warm and dry, the site was open, and trucks were dumping waste. Again, Anderson determined by visual inspection that the City was not complying with the cover requirement.

Anderson's next inspection was on February 12, 1982. He was accompanied by Will Terrell of the City of Greenville. The weather was cold and wet and the site was no longer accepting solid waste. Anderson testified the site was not in compliance with the cover requirement at that time either. He made additional inspections on the following dates: May 19, 1982; October 18, 1982; February 17, 1983; April 7, 1983; September 8, 1983; March 21, 1984; June 9, 1985; and October 15, 1985. Anderson testified that on each of these dates the site did not comply with the two-foot cover requirement.

The State also introduced a series of photographs taken during the March 21, 1984, inspection by Anderson and two professional engineers, one from the Arlington regional office and one from the Austin office of the Health Department. The photos show the site from different vantage points. The location of the vantage points and the direction of the camera were shown on a map that was also admitted. The photos show uncovered solid waste at a number of locations and some waste apparently protruding from the ground in a few pictures.

Mike Lavigne, a city sanitarian who had worked for the city since February 2, 1982, testified that he had made seven visits to the landfill from February, 1982, to November 6, 1985, and that the photographs were a fair reflection of the way the site had looked throughout that period of time. He also stated that he did not know for a fact whether a contractor ever actually went out and covered the landfill.

The City contends that the State failed to carry its burden to prove that a two-foot cover was not placed on the site because Anderson only made visual surveys of the site's surface. It argues that the depth of the soil over the solid waste deposits cannot be measured by surface inspection and, to carry its burden, the State was required

to introduce evidence of subsurface borings. In addition, it complains that there is no evidence of which parts of the land were a "completed portion of the fill" or when any portion was completed, if it was; consequently, it is impossible to determine when the thirty days began to run in order to further ascertain whether a final cover was applied within thirty days of completion. We disagree.

The jury could infer from the October 8, 1981, memorandum or from the November 13, 1981, letter that the City had completed a portion of the landfill that required a two-foot cover either by October 8, 1981, or by October 12, 1981, respectively. The evidence shows the City did not let a contract for closure until November 10, 1981, and there is no evidence proving the actual date that the contractor completed his work other than sometime prior to January 29, 1982. Thus, the evidence supports the inference that the City did not provide a "final cover of at least two feet of soil" over the completed portion within thirty days of either October 8, 1981, or October 12, 1981. Further, there is no evidence of the weather conditions from which the jury could determine whether inclement weather prevented the application of a cover during the thirty-day period.

■ In addition, Anderson was qualified as an expert in the subject matter on trial and stated that the City had never complied with cover requirements from July 1981 through October 1985. The fact that his testimony was not supported by the results of subsurface tests goes to his credibility and the weight to be given his testimony and was a matter for the jury. *See General Motors Corp. v. Turner*, 567 S.W.2d 812 (Tex.Civ.App.—Beaumont 1978), *rev'd on other grounds*, 584 S.W.2d 844 (Tex.1979). Also, the jury could infer from the admitted photographs that the City "caused, suffered, allowed or permitted solid waste to be deposited and remain" at the site without providing the two-foot cover as late as March 21, 1984. Accordingly, we hold that the evidence was legally sufficient to support the jury's answer to the second special

issue. The City's first point of error is overruled.

We turn now to the City's contention that the evidence was insufficient to support the jury's finding to the same issue. In reviewing "factually insufficient evidence" points, we must consider all the evidence, including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). Since we have already reviewed the State's evidence, we must now review the case presented by the City.

The City presented two witnesses. The first was Neil Montgomery, Greenville's director of community development. He testified that the City, using routine contracting procedures, solicited bids for a contractor to provide landfill closure services at the site. The contract was awarded to a dozer service on November 10, 1981, and the work was completed and inspected on January 29, 1982. Defendant's exhibits one through six are documents supporting this testimony. The City's second witness, Mike Lavigne, is the city sanitarian. He testified that he visited the landfill site on seven occasions between February 19, 1982, and November 1985. He stated that he had received no complaints about insufficient cover on the landfill or about any health or odor problem that could be caused by insufficient cover on the landfill. He also testified that on November 6, 1985, he visited the site and took photographs which depicted the scene on that date. Defendant's exhibit seven is a map of the site location, and exhibit eight is the photos. Prior to taking each photograph, Lavigne testified that he caused a boring to be dug at each location. Into each boring was placed a surveyor's measuring instrument which indicated the depth of each boring. He further testified that there was at least two feet of soil covering solid waste at each location.

■ Having considered the entire record, we hold that the evidence was factually sufficient to support the jury finding. To answer "yes" to the special issue, the jury had to find that the City failed to provide adequate cover within thirty days after a

portion of the fill was completed unless prevented by inclement weather. The evidence is conflicting as to whether the City provided a two-foot cover at any time; therefore, it was a matter solely within the province of the jury. *Air Conditioning, Inc. v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422 (1953). The City's second point of error is overruled.

The City's third point of error concerns the jury's answer to the third special issue, which reads as follows:

Find from a preponderance of the evidence the number of days, if any, on which the City of Greenville caused, suffered, allowed, or permitted waste to remain without proper final cover.

Answer in number of days.

ANSWER: 1419

The City contends that the trial court erred in rendering judgment based on this issue because there was no evidence that the City caused, suffered, allowed or permitted solid waste to remain without proper cover for even one day, because the State failed to prove by a preponderance of the evidence a time when the counting of days began, a time when the counting ended, and any continuation of the alleged violation between those two points in time. Again, the City maintains there is no evidence as to what portions of the landfill were "completed" portions so that the date could be determined on which the thirty-day period for application of final cover began to run. The City speculates that the jury most likely used December 30–31, 1981, to begin counting the days of violation because Adkisson stated in his letter to the Austin office that by using city tractors, "it would be impossible to accomplish a successful closure ... by January 1, 1982." However, the City argues that the reference to this date is not evidence of when any portion of the fill was "completed" and, in fact, using January 1, 1982, to begin the count means the jury had to find the fill was completed on or about December 1, 1981, a date not mentioned in the record.

Using the analysis in *Garza v. Alviar*, 395 S.W.2d at 823, and *Stedman v. George-* *town Savings and Loan Ass'n.*, 595 S.W.2d at 488, we cannot agree. The jury could conclude that the fill was completed on the day it was closed. The evidence indicates it was closed by October 8, 1981, or October 12, 1981, or prior to January 29, 1982, and Anderson testified that he first observed the landfill closed on February 12, 1982. In any event, the exact date of closure was within the peculiar knowledge of the City, and its failure to produce the exact date raises the presumption that, if offered, the evidence or testimony would have been unfavorable to it. *City of Galveston v. State*, 518 S.W.2d 413, 417 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ). Furthermore, the jury could have reasonably interpreted Adkisson's reference to closure by January 1, 1982, in his letter to the Austin office, as an extension of the statutory period for providing cover that was granted to the City by the State. This conclusion is supported by the fact that there were 1,419 days from December 30–31, 1981, to the dates of trial on November 18–19, 1985. Certainly, the City was not harmed by the jury's beginning the count on or about December 30–31, 1981, in light of other evidence from which the jury could have begun the count even earlier.

■ Finally, there is evidence of a continuing violation. Anderson testified that he inspected the site eleven times from July 23, 1981, through October 15, 1985, and that after each inspection he concluded that the site did not have two feet of cover over the waste. The jury could conclude from his testimony that during this 1,545 day period the City was at no time in compliance with the final cover requirement. Also, Mike Lavigne testified that there was no change in the site's appearance from February 1982 to November 6, 1985. The jury finding is within the limits established by the evidence; therefore, we cannot substitute our findings for those of the jury. *See Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The City's third point of error is overruled.

In its fourth point of error, the City contends that the trial court erred in admit-

ting into evidence plaintiff's exhibit four, because the admission of the exhibit was reasonably calculated to cause and probably did cause entry of an improper verdict and rendition of an improper judgment against the City. Plaintiff's exhibit four, as discussed earlier, is a letter from John J. Adkisson, Greenville's administrative assistant in the Department of Public Works, to Jack C. Carmichael, the State's acting chief of the Bureau of Solid Waste Management. Rule 801(e)(2)(D) of the Texas Rules of Evidence provides that a statement is not hearsay (and therefore admissible) if "the statement is offered against a party and is a statement by his agent or servant concerning a matter within the scope of his employment, made during the existence of the relationship." The City does not dispute this; it simply contends, in relevant part, that there is no evidence that Adkisson was employed by the City at the time the letter was written or that the matter was within the scope of his employment, if such employment had been established. We do not agree.

■ Aubrey Anderson testified that he went to the City Public Works Department where he met Adkisson; that Adkisson was an employee of the City; that he thought Adkisson was the Public Works Director but he was not sure of Adkisson's title. He further testified that Adkisson accompanied him to the dump site on July 28, 1981, and they discussed the conditions there. The record further reveals that the letter was written on stationery with a City of Greenville letterhead and that the Texas Department of Health received the letter. We hold that this evidence is sufficient to support a finding that Adkisson was an employee of the City at the time the letter was written and that Adkisson wrote the letter within the scope of his employment. See TEX.R.EVID. 901(b)(4). The City's fourth point of error is overruled.

In its fifth point of error, the City contends that the trial court erred in admitting into evidence plaintiff's exhibit five, which consists of twenty-four photographs of the site, taken on March 21, 1984, by Phil Spry, an engineer from the surveillance department in Austin who accompanied Aubrey Anderson on an inspection, and a map of the site showing where each photograph was taken. The State offered these photos to show that solid waste was protruding from the ground at the site, and that therefore the City was not in compliance with the final cover requirements.

■ We disagree with the City's contention that the photographs were inadmissible as evidence. The trial court has wide discretion concerning the admissibility of photographs; generally, the sole question is whether the court has abused its discretion. *Miller v. Patterson*, 537 S.W.2d 360 (Tex.Civ.App.—Fort Worth 1976, no writ). If a verbal description of the item is admissible, a photograph depicting it is also admissible. *See Morin v. State*, 682 S.W.2d 265, 269 (Tex.Crim.App.1983). Anderson inspected the site on the day the photographs were taken, and stated that they accurately depicted the site on that day. He also testified that, on the basis of his visual survey, the City was not in compliance with the final cover statute. Since this testimony is admissible, the photographs are also admissible.

The City argues that the photographs were improper because of their highly prejudicial nature, since the State introduced them for the purpose of showing other possible violations of regulations not related to the final cover requirements, such as failing to maintain intermediate cover of six inches of soil, erosion of cover, ponding of water, post-closure maintenance, and post-closure use of landfill areas. Having examined the photographs, we do not agree. Several photographs show waste protruding from the ground. This is just as indicative of the City's failure to provide final cover as it is of any other violation. The jury was free to decide whether the photos accurately depicted a violation of the final cover requirements. We hold that the court did not abuse its discretion in admitting the photographs. The City's fifth point of error is overruled.

Having ruled on the City's points of error, we now turn to the State's. In its sole point of error, the State contends that the

trial court erred in not assessing the City a civil penalty of one hundred dollars for each day the jury found the City in violation of the cover requirement. Central to this argument is the proper construction of the Solid Waste Disposal Act, section 8(a)(2), which provides:

> Any person who violates any provision of this Act or of any rule of the department [of Health] ... is subject to a civil penalty of not less than $100.00 nor more than $2,000.00 for each act of violation and for each day of violation, as the court may deem proper, to be recovered in the manner provided in Section 8.

TEX.REV.CIV.STAT.ANN. art. 4477–7, sec. 8(a)(2) (Vernon Supp.1986).

The parties are in dispute about the proper construction of the words "is subject to" and "as the court deems proper," as used in this section of the statute. The State contends that "is subject to" is mandatory language, requiring the trial court to assess a civil penalty against any person found to have violated the Act or a health department rule. It further argues that "as the court deems proper" only grants the trial court discretion in assessing the amount of the penalty within the statutory range provided for each act and each day of violation; therefore, since the State elected, by trial amendment, to accept the minimum penalty of $100 per day, the proper fine should be $141,900, or $100 per day for the jury finding of 1,419 days of the City's violation of the statute.

On the other hand, the City maintains that "is subject to" is permissive language and that, if the legislature had intended a civil penalty against every violator, it would have used "shall" or "must," as it did when it established criminal penalties in the same statute. The City further argues that "as the court deems proper" modifies "is subject to a civil penalty"; thus, the legislature intended the trial court to have the discretion to enter *no* civil penalty in appropriate cases. However, the City concedes that *if* the court decides to assess a penalty, it must be in an amount not less than $100 nor more than $2,000 per act and per day of violation.

■■■ The object of statutory construction is to ascertain and enforce the legislative intent. *Calvert v. British-American Oil Producing Co.*, 397 S.W.2d 839, 842 (Tex.1965). Legislative intention must be ascertained from the language of the statute. *Duval Corp. v. Sadler*, 407 S.W.2d 493, 497 (Tex.1966). The phrase in the statute essential to the disposition in this case, "is subject to," is not defined in the statute. Thus, we must presume that the legislature intended the phrase to have its natural, ordinary, and familiar meaning. *Satterfield v. Satterfield*, 448 S.W.2d 456 (Tex.1969).

■■■ In addition, we must examine the statute as a whole to determine the legislature's intent when it used the phrase "is subject to" in section 8(a)(2). *City of West Lake Hills v. Westwood Legal Defense Fund*, 598 S.W.2d 681 (Tex.Civ.App.— Waco 1980, no writ). The Texas Solid Waste Disposal Act is a public health statute. Section 1 of the act provides:

> It is the policy of this state and the purpose of this act to safeguard the health, welfare and physical property of the people, and to protect the environment, through controlling the management of solid wastes....

TEX.REV.CIV.STAT.ANN. art. 4477–7, sec. 1 (Vernon Supp.1986). A statutory provision is generally regarded as mandatory where the power or duty to which it relates is for the public benefit, good, interest or protection, for the security of public rights, or for the advancement of public justice. *Green v. County Attorney of Anderson County*, 592 S.W.2d 69, 73 (Tex. Civ.App.—Tyler 1979, no writ).

However, the City insists that if the legislature intended a mandatory fine for violation of the act, it would have used "shall be subject to" rather than "is subject to." We do not agree. We find no discernible difference between these phrases other than the former is future tense and the latter is present tense; therefore, we do not see how "is" connotes discretion when "shall be" does not.

Moreover, if this fine were optional, as the City suggests, the statute would allow the trial court discretion to assign a fine of $0, thus rendering the words "not less than $100" a useless appendage, a construction not favored by the law. *Carson v. Hudson*, 398 S.W.2d 321 (Tex.Civ.App.—Austin 1966, no writ). Finally, the City's construction would allow either no fine or a minimum of $100 per day and per act. In construing a statute, we presume that a just and reasonable result was intended by the legislature. *Logan v. Armstrong*, 694 S.W.2d 68 (Tex. App.—Corpus Christi 1985, no writ). For all of the reasons stated, we hold that "is subject to," as used in section 8(a)(2), is mandatory language and that the legislature intended that every violator of the Act or of any Health Department rule pay a civil penalty within the range stated in that section. *See Houston Street Corporation v. Commissioner of Internal Revenue*, 84 F.2d 821 (5th Cir.1936) (no distinction between the phrases "liable for such tax" and "subject to a tax," holding that both connote payment of a tax).

Also, the City contends that the phrase, "as the court may deem proper," implies that the legislature intended that the court, in its discretion, may deem no civil penalty proper. We cannot agree. The phrase follows "is subject to a civil penalty of not less than $100.00 nor more than $2,000.00 for each act of violation and for each day of violation." We hold that the clause "as the court may deem proper" grants the court the discretion to determine the amount of the penalty to be assessed within the range given, not the discretion to determine whether to assess the fine at all. If a judge, in his discretion, were allowed to waive the fine for violators of the act, the entire purpose of the statute would be

undermined. The State's point of error is sustained.

Accordingly, we reverse the judgment of the trial court and render judgment that the State of Texas recover $141,900 from the City of Greenville.

HOWELL, J., dissents with opinion.

HOWELL, Justice, dissenting.

I dissent. This is a penal statute and must be construed as such. Traditionally, the courts have been construed as possessing wide powers to reduce penalties and to enter remittiturs thereon. In the case at hand, there was, essentially speaking, only one violation. That violation was complete on the thirty-first day after the City elected to discontinue use of the landfill. To say that "each day of violation" is a separate offense is the equivalent of holding that a thief commits a new crime on each day that he retains the victim's property. As applied to the facts of this case, the concept of continuing violation is more semantic than real.[1] The "each day of violation" provision of the statute should be construed as a minimum standard of proof that the State must meet in order to exact a penalty rather than as a measure of the punishment that may be imposed. Semantic discussions with regard to "continuing violation" as opposed to a series of new and independent violations shed little light upon the problem at hand.

It was within the court's discretion to determine that punishment equal to the $100 per day minimum was sufficient to deter future violations and to deny punishment for more than a fifty-day period even though remedial work had not commenced by the end of said fifty days. It should be borne in mind that the defendant is a municipality and that any penalty assessed

---

1. It is true that statutes fixing penalties relating to the use or condition of real property generally speak in terms of "continuing violation" and often set penalties on a per diem basis. The reasoning behind this approach is to relieve the prosecutor of proving the date upon which the violation first occurred and to provide an incentive to the property holder to remedy the condition in order to prevent additional penalties from accruing. Nevertheless, semantics aside,

if it be accepted that the only legitimate objective of penal laws is to discourage human misconduct and to punish violations that have occurred, we must accept that the human misconduct here involved occurred primarily, if not exclusively, before the end of the thirty-day cover-up period. Any subsequent misconduct was identical to the misconduct of the thief who failed to return stolen goods.

will not be paid by the real offender or offenders but by innocent citizen-taxpayers. This penal statute should be construed as authorizing the trial court to remit all penalties accruing after the fiftieth day of violation. Such is a reasonable construction of the phrase "as the court may deem proper."

If we take the approach urged by the State, the statute of limitations will never apply because the offense is continuing. After ten years, the court will be powerless to assess less than $365,000 even if the violation were not detected and called to the offender's attention until the last day of the tenth year. The $141,900 penalty being assessed herein would literally bankrupt hundreds of small municipalities of this state. Within thirty years or so, the minimum penalty would exceed one million dollars. The example may seem extreme, but the statute fixes no limit upon the power of the state authorities to hunt for old abandoned trash dumps that were improperly covered, to hunt out the owners and to demand the penalties fixed by law. Perhaps, there should be no time limit on their authority to do so.

However, the court involved in the case should be empowered to fashion a punishment sufficient to fit the crime.[2]

I dissent. The State does not challenge the trial court for an abuse of discretion. Not being requested to apply the abuse of discretion test, we should refrain from doing so. We should overrule the contention that the trial court was powerless to fix a lesser penalty and affirm the $5,000 fine imposed.

---

2. Alternatively, it is presented that the majority has disregarded the "inclement weather" provision. That proviso may be read in at least three ways:

(1) If the weather is inclement on the thirtieth day, the duty to cover is excused and the violator may never be punished (a most literal but entirely incomprehensible interpretation).

(2) If the weather is inclement on the thirtieth day, no violation occurs on that day but the duty to cover remains in effect and the violation is complete on the first day when the weather is not inclement.

(3) If the weather is inclement on any date beginning with the thirty-first day, no violation occurs on that specific date and that specific date must be excluded in the calculation of penalties.

If the State's concept of each day as a new and independent violation is to be accepted, it must also be accepted that no violation occurred on any date within the 1,419 day period when the weather was inclement. We know judicially that there are numerous days of inclement weather during each and every year. Yet the State, having the burden in this penal action, presented no evidence of the specific dates on which the weather would permit cover-up operations. Perhaps, the case should be remanded to remedy this deficiency in the evidence. On the other hand, it is quite possible that the trial court took this deficiency in the proof into consideration in fixing the penalty. Inasmuch as the State does not challenge the sufficiency of the court's finding, that finding should not be disturbed.