ACCEPTED
03-15-00428-CV
8092426
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/4/2015 12:07:59 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-00428-CV

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF TEXAS AT Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/4/2015 12:07:59 PM
JEFFREY D. KYLE
Clerk

**BERNARD MORELLO**,

*Appellant*,

V.

**STATE OF TEXAS**,

*Appellee.*

On Appeal from the 353RD Judicial District Court of Travis County, Texas

## RESPONSE BRIEF OF APPELLEE THE STATE OF TEXAS

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection
Division

CRAIG J. PRITZLAFF
Assistant Attorney General
State Bar No. 24046658
*craig.pritzlaff@texasattorneygeneral.gov*

LINDA B. SECORD
Assistant Attorney General
State Bar No. 17973400
*linda.secord@texasattorneygeneral.gov*

Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR APPELLEE,
THE STATE OF TEXAS

**December 4, 2015**

# Table of Contents

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ........................................................................ viii

STATEMENT OF THE CASE.........................................................................1

STATEMENT ON ORAL ARGUMENT ...........................................................2

ISSUES PRESENTED FOR REVIEW ...............................................................3

Issue 1: *The final judgment issued by the District Court granting summary judgment should be affirmed because there are no fact questions – Bernard Morello admitted every essential fact establishing his individual liability for causing, allowing, or permitting violation of a Compliance Plan governing the management of contaminated groundwater at a former manufacturing facility*

Issue 2: *Morello waived the issue of whether the District Court properly severed the case against White Lion from the case against him. Even if it were properly preserved, this Court should hold, as the First Court of Appeals did in White Lion's appeal, that severing the two parties was proper both procedurally and substantively*

Issue 3: *The District Court did not abuse its discretion when it denied Morello's motion for new trial because Morello did not raise any new issues from what was presented at summary judgment. The evidence included with the motion could have been obtained ten years earlier and Morello's arguments as to the corrective action set forth in the Compliance Plan constituted an impermissible collateral attack on the plan*

STATEMENT OF FACTS ...............................................................................4

I. Regulatory Background .........................................................................4

    A. Requirements concerning long-term management of closed hazardous waste units .........................................................................4

      1. The TCEQ issues permits for closure and post-closure care of waste units..................................................................................4

      2. The TCEQ issues compliance plans for the management of contaminated groundwater emanating from permitted closed waste units .........................................................................................4

   B. Persons that cause, suffer, allow, or permit a violation of a compliance plan and related rules are subject to civil penalties under the Texas Water Code.................................................................6

II. Background of this facility and its environmental conditions...........................6

   A. Morello's purchase of the facility and transfer to White Lion ...............6

   B. At the time it was purchased, the facility contained several closed hazardous waste units and a plume of contaminated groundwater requiring long-term management and monitoring....................................8

   C. Morello's initial strategy of delaying compliance...............................10

   D. Under Morello, the groundwater monitoring and treatment system rapidly deteriorated and was ultimately destroyed...................13

   E. The record demonstrates that Morello was personally involved with the operation of the facility and admitted taking affirmative action thwarting and preventing compliance........................................14

   F. The District Court granted summary judgment first against White Lion, then, after additional discovery was completed, against Morello......................................................................................18

STANDARD OF REVIEW ..............................................................................19

   A. Traditional motions for summary judgment are reviewed de novo ......19

   B. Motion for new trial are reviewed for abuse of discretion ..................20

   C. Orders of severance are reviewed for abuse of discretion....................21

iii

SUMMARY OF THE ARGUMENT ......................................................................22

ARGUMENT AND AUTHORITIES................................................................24

Issue 1: *The final judgment issued by the District Court granting summary judgment should be affirmed because there are no fact questions – Bernard Morello admitted every essential fact establishing his individual liability for causing, allowing, or permitting violation of a Compliance Plan governing the management of contaminated groundwater at a former manufacturing facility*........................................24

I.    The State conclusively proved that Morello caused, allowed, or permitted violation of the Compliance Plan for over a decade (Response to Appellant's Issue One)..............................................................................24

A.    Morello cannot avail himself of the liability shield typically afforded members of a limited liability company because he personally directed, participated in, had knowledge of, and assented to acts and omissions that caused White Lion to violate the Compliance Plan ..............................................................25

1.   In cases regarding the direct, individual liability of an officer of a limited liability company, piercing the corporate veil is not required ..............................................................................26

2.   Corporate officers of limited liability companies may be held directly liable for their own wrongful acts...................................27

3.   Section 7.102 of the Texas Water Code imposes liability against any person, including a corporate officer of a limited liability company, who causes, allows, or permits a violation of a state environmental permit or law............................................28

4.   Direct, individual liability of an officer for causing, allowing or permitting a violation of an environmental permit or statute does not require additional statutory language to overcome a corporate officer's statutory liability because the officer's liability is based on his own conduct as an individual, not as an agent of the limited liability company.......................................33

B.    Morello admitted that he caused, allowed, and/or permitted White Lion to not comply with the Compliance Plan and admitted to taking specific actions that prevented his company from complying...................................................................................34

C.    Morello admitted he caused, allowed, and/or permitted White Lion to not post financial assurance ....................................................35

D.    Compliance with the Compliance Plan was not excused ......................36

      1.   The Court of Appeals for the First District of Texas has already rejected the defense of excuse and third-party interference in this matter...............................................................37

      2.   The defense of excuse based on commercial and economic impossibility is unavailable in statutory environmental enforcement cases; and even if it were applicable, Morello testified to facts that defeated the defense ......................................37

Issue 2: *Morello waived the issue of whether the District Court properly severed the case against White Lion from the case against him. Even if it were properly preserved, this Court should hold, as the First Court of Appeals did in White Lion's appeal, that severing the two parties was proper both procedurally and substantively*.........................40

II.   The District Court properly severed White Lion to make White Lion's judgment final and appealable (Response to Appellant's Issue Two).............40

A.    Morello waived complaint about severance because he did not timely challenge the District Court's severance order...........................40

B.    This issue has already been considered by the First Court of Appeals, which has held that severance in this case was proper...........42

C.    The severance was timely. Severing a party after granting summary judgment as to that party is not a "post-submission" severance and the District Court properly ordered severance after granting summary judgment as to White Lion ......................................43

D.  The suits against White Lion and Morello are separate and distinct and severance was proper to make the judgment against White Lion final.......................................................................44

E.  There is no apportionment of liability under the Texas Water Code ....................................................................................46

F.  The civil penalties assessed are not unconstitutionally excessive and penalties assessed against two separate parties do not constitute a double recovery ...............................................47

1.  There was no excessive fine because the District Court awarded only the minimum penalty permitted by section 7.102 of the Texas Water Code.......................................47

2.  That White Lion and Morello are related parties does not make a recovery against each party under section 7.102 of the Texas Water Code an impermissible double recovery ..................50

3.  Morello has not been deprived of an ability to litigate his defense................................................................................50

Issue 3:  *The District Court did not abuse its discretion when it denied Morello's motion for new trial because Morello did not raise any new issues from what was presented at summary judgment. The evidence included with the motion could have been obtained ten years earlier and Morello's arguments as to the corrective action set forth in the Compliance Plan constituted an impermissible collateral attack on the plan*........................................................52

III.  The District Court properly rejected Morello's request for a new trial based on Morello's lack of diligence in obtaining "new evidence" (Response to Appellant's Issue Three) ..........................................52

A.  The information attached to his motion for new trial includes information Morello promised to provide the TCEQ in 2004 and he offers no cogent explanation for why he could not have obtained it sooner.................................................................53

    B.    Morello's arguments constitute an impermissible collateral attack on the Compliance Plan ...............................................................54

CONCLUSION AND PRAYER ...............................................................57

CERTIFICATE OF COMPLIANCE ...................................................59

CERTIFICATE OF SERVICE ...............................................................59

# Table of Authorities

**Cases**                                                                  **Pages**

*Arredondo v. City of Dallas*,
     79 S.W.3d 657 (Tex. App.—Dallas 2002, pet. denied) ...............................43

*Cherokee Water Co. v. Forderhause*,
     641 S.W.2d 522 (Tex. 1982) ........................................................................40

*City of Houston v. Clear Creek Basin Auth.*,
     589 S.W.2d 671 (Tex. 1979) ........................................................................20

*Coleman v. Savoie*,
     No.03-97-00548-cv, 1998 WL 305322
     (Tex. App.—Austin 1998, no pet ).................................................................27

*Dixon v. State*,
     808 S.W.2d 721 (Tex. App.—Austin 1991, writ dism'd w.o.j.)....................25

*Downer v. Aquamarine Operators, Inc.*
     701 S.W.2d 238 (Tex. 1985) ..................................................................21, 53

*Goodyear Tire & Rubber Co. v. Mayes*,
     236 S.W.3d 754 (Tex. 2007) ........................................................................19

*Guar. Fed. Sav. & Loan Ass'n v. Horseshoe Operating Co.*,
     748 S.W.2d 519 (Tex. App.—Dallas 1988, writ granted), *aff'd in part,*
     *rev'd in part sub nom. Guar. Fed. Sav. Bank v. Horseshoe Operating*
     *Co.*, 793 S.W.2d 652 (Tex. 1990)..........................................................41, 42

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,*
     793 S.W.2d 652 (Tex. 1990) ..................................................21, 40, 41, 44, 45

*Guidry v. Nat'l Freight, Inc.,*
     944 S.W.2d 807 (Tex. App.—Austin 1997, no writ.) ............................40, 43

*Health Enrichment & Longevity Inst., Inc. v. State*,
     No. 03-03-00578-CV, 2004 WL 1572935
     (Tex. App.—Austin July 15, 2004, no pet) .................................................. 33

*Hill v. Milani,*
　678 S.W.2d 203 (Tex. App.—Austin 1984),
　*aff'd* 686 S.W.2d 610 (Tex. 1985) .........................................................21, 54

*Jackson v. Van Winkle,*
　660 S.W.2d 807 (Tex. 1983), *overruled on other grounds by*
　*Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003) ...............................................21

*Jones v. Ray*,
　886 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1994, no writ) ................47

*Laurel v. Herschap*,
　5 S.W.3d 799 (Tex. App.—San Antonio 1999, no pet.) ..............................21

*Leyendecker & Assocs., Inc. v. Wechter,*
　683 S.W.2d 369 (Tex. 1984) ...........................................................25, 27, 30

*McConnell v. Southside Indep. Sch. Dist.*,
　858 S.W.2d 337 (Tex. 1993) .......................................................................20

*Miller v. Keyser*,
　90 S.W.3d 712 (Tex. 2002) .........................................................................29

*Morgan v. Compugraphic Corp.,*
　675 S.W.2d 729 (Tex. 1984) .......................................................................43

*Newell Recycling Co. v. E.P.A.*,
　231 F.3d 204 (5th Cir. 2000) ......................................................................47

*Nwokedi v. Unlimited Restoration Specialists, Inc.*
　428 S.W.3d 191 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)..........27

*Pierce v. Reynolds*,
　329 S.W.2d 76 (Tex. 1959) .........................................................................41

*Provident Life & Accident Ins. Co. v. Knott,*
　128 S.W.3d 211 (Tex. 2003) ..................................................................19, 20

*R. Commc'ns, Inc. v. Sharp*,
     875 S.W.2d 314 (Tex. 1994) ........................................................................51

*Santos v. Holzman*,
     No. 13-02-662-cv, 2005 WL 167309
     (Tex. App.—Corpus Christi Jan. 27, 2005, pet. denied) (mem. op.) ............47

*Sanchez v. Mulvaney*,
     274 S.W.3d 708, (Tex. App.—San Antonio 2008, no pet) .....................26, 27

*Shook v. Walden*,
     368 S.W.3d 604 (Tex. App.—Austin 2012, pet. denied) ..............................26

*S.O.C. Homeowners Ass'n v. City of Sachse*,
     741 S.W.2d 542 (Tex. App.—Dallas 1987, no writ).....................................45

*State v. City of Greenville*,
     726 S.W.2d 162 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)...................35, 48

*State v. Malone Serv. Co.*,
     853 S.W.2d 82
     (Tex. App.—Houston [14th Dist.] 1993, writ denied) ................29, 30, 31, 50

*Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*,
     644 S.W.2d 443 (Tex.1982) ........................................................................19

*Valence Operating Co. v. Dorsett*,
     164 S.W.3d 656 (Tex. 2005) ........................................................................19

*White v. Wah*,
     789 S.W.2d 312 (Tex. App.—Houston [1st Dist.] 1990, no writ) ................54

*White Lion Holdings, L.L.C. v. State*,
     No. 01-14-00104-CV, 2015 WL 5626564
     (Tex. App.—Houston [1st Dist.] Sept. 24, 2015, no pet. h.)
     (mem.op.)................................................................1, 29, 37, 41, 42

*Whitney Stores, Inc. v. Summerford*,
     280 F.Supp. 406 (D.S.C. 1968), *aff'd* 393 U.S. 9 (1968)..............................49

## Statutes

Tex. Bus. Orgs. Code Ann.
§ 101.114 ..................................................................................................25

Tex. Gov't Code Ann.
§ 311.005(2)..............................................................................................29

Tex. Health & Safety Code
§ 247.021 ..................................................................................................33
§ 247.045(h)..............................................................................................33
§ 361.002 ....................................................................................................4
§ 361.017 ....................................................................................................4
§ 361.024 ....................................................................................................4
§ 361.061 ....................................................................................................4

Tex. Water Code
ch. 7 .........................................................................................................28
§ 7.101 ........................................................................................6, 28, 30
§ 7.102 .......................................................................... 6, 28, 30, *passim*
§ 27.101 ....................................................................................................30

## Rules

Civ. Prac. & Rem. Code ch. 33 ..............................................................................30

Tex. R. App. P. 39.1......................................................................................................2

Tex. R. Civ. P.
41 ...............................................................................................................43
320 .............................................................................................................20
166a(c).......................................................................................................20

16 Tex. Admin. Code ch. 76 (formerly 30 Tex. Admin. Code ch. 238) .................14

30 Tex. Admin. Code ch. 37
Subchapter B.................................................................................................5
Subchapter C...............................................................................................36
Subchapter P ...........................................................................................5, 10

§ 37.81 ............................................................................................10

§ 37.200-.261 ....................................................................................36

§ 37.6021 ..........................................................................................35

30 Tex. Admin. Code ch. 305 .....................................................................4

Subchapter D ...............................................................................12, 55

§ 305.64(g)...............................................................................5, 10, 11, 35

§ 305.69 ..........................................................................................55

§ 305.401 ...........................................................................................5

30 Tex. Admin. Code ch. 335 .....................................................................4

§ 335.157 ............................................................................................5

§ 335.157(a)(3) ....................................................................................5

§ 335.158 ............................................................................................5

§ 335.165 ..........................................................................................12

§ 335.166 ......................................................................................5, 12

§ 335.166(1)......................................................................................5, 9

§ 335.166(2).........................................................................................9

§ 335.166(4).........................................................................................9

§ 335.166(5).........................................................................................9

§ 335.166(6).........................................................................................5

§ 335.166(7).........................................................................................9

§ 355.166(8).......................................................................................38

§ 355.167 ..........................................................................................12

§ 355.167(b)...................................................................................5, 35

**TO THE HONORABLE COURT OF APPEALS:**

Appellee, the State of Texas ("State"), files this brief in response to the brief of Appellant, Bernard Morello ("Morello").

**STATEMENT OF THE CASE**

This is an environmental enforcement case brought by the State of Texas, on behalf of the Texas Commission on Environmental Quality ("TCEQ"),[1] against Bernard Morello for his personal, egregious and admitted actions to deliberately prevent his company, White Lion Holdings, LLC ("White Lion"), from coming into compliance with the plain language of a TCEQ-required Compliance Plan requiring long-term treatment and monitoring of contaminated groundwater at a former pipe manufacturing facility located in Rosenberg, Texas. The State sued both White Lion and Morello. (CR 33-43). It obtained a summary judgment against White Lion in 2013, which was affirmed on appeal by the Court of Appeals for the First District in 2015. W*hite Lion Holdings, L.L.C. v. State*, No. 01-14-00104-CV, 2015 WL 5626564 (Tex. App.—Houston [1st Dist.] Sept. 24, 2015, no pet. h.) (mem. op.). In 2015, following additional discovery, including the deposition of Morello, the Travis County District Court granted summary judgment against him and denied his motion for new trial. (CR 1400; 1457-1462; and CR 1767-1771).

---

[1] For convenience, the Commission and its predecessor agencies (including the Texas Water Commission and Texas Natural Resource Conservation Commission) are referred to herein as the TCEQ.

- 1 -

## STATEMENT ON ORAL ARGUMENT

Oral argument would not assist in the determination of this appeal. The District Court determined there was no factual dispute and granted summary judgment. The dispositive issues have been authoritatively decided and the facts and legal arguments will be adequately presented in the briefs and the record. Tex. R. App. P. 39.1. However, if oral argument is granted to Appellant, then Appellee asks to participate.

# ISSUES PRESENTED FOR REVIEW

Issue 1:   The final judgment issued by the District Court granting summary judgment should be affirmed because there are no fact questions – Bernard Morello admitted every essential fact establishing his individual liability for causing, allowing, or permitting violation of a Compliance Plan governing the management of contaminated groundwater at a former manufacturing facility.

Issue 2:   Morello waived the issue of whether the District Court properly severed the case against White Lion from the case against him. Even if it were properly preserved, this Court should hold, as the First Court of Appeals did in White Lion's appeal, that severing the two parties was proper both procedurally and substantively.

Issue 3:   The District Court did not abuse its discretion when it denied Morello's motion for new trial because Morello did not raise any new issues from what was presented at summary judgment. The evidence included with the motion could have been obtained ten years earlier and Morello's arguments as to the corrective action set forth in the Compliance Plan constituted an impermissible collateral attack on the plan.

## STATEMENT OF FACTS

**I.      Regulatory Background**

**A.      Requirements concerning long-term management of closed hazardous waste units**

**1.      *The TCEQ issues permits for closure and post-closure care of waste units***

It is the policy of the State of Texas "to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste…." Tex. Health & Safety Code § 361.002. The State of Texas has authorized the TCEQ to control all aspects of the management of industrial and hazardous wastes and the TCEQ has adopted rules for the management and control of industrial and hazardous wastes at 30 Tex. Admin. Code ch. 335. *See* Tex. Health & Safety Code §§ 361.017 and 361.024. The TCEQ is also authorized to require permits for the operation, maintenance, closure, and post-closure monitoring of solid and hazardous waste facilities. *See* Tex. Health & Safety Code § 361.061; *see also* 30 Tex. Admin. Code chs. 305 and 335.

**2.      *The TCEQ issues compliance plans for the management of contaminated groundwater emanating from permitted closed waste units***

As part of the closure of a waste unit, if hazardous constituents from a regulated waste unit are detected in groundwater in excess of concentration limits, the TCEQ will establish and issue a 'compliance plan' specifying the corrective action required to address the groundwater contamination. *See* 30 Tex. Admin.

Code §§ 305.401, 335.157(a)(3), and 335.167(b). The corrective action is designed "to ensure that regulated units are in compliance with the groundwater protection standard." 30 Tex. Admin. Code § 335.166(1). The groundwater protection standard is established by the TCEQ in accordance with 30 Tex. Admin. Code § 335.158. The groundwater protection standard included in a compliance plan may include long-term performance criteria (removal and treatment of contaminated groundwater) to achieve reductions of contaminant concentrations and monitoring criteria to measure performance. 30 Tex. Admin. Code §§ 335.157 and 335.166. The TCEQ will establish an initial term for the compliance plan, which may be extended depending on site conditions "for as long as necessary to achieve compliance with the groundwater protection standard." 30 Tex. Admin. Code § 335.166(6).

The corrective action specified in the compliance plan must be guaranteed with a financial assurance mechanism, the initial amount of which will be included in the compliance plan. 30 Tex. Admin. Code § 335.167(b). The criteria for determining the type and amount of financial assurance is set forth in 30 Tex. Admin. Code Chapter 37, Subchapters B and P. When a facility subject to a compliance plan changes ownership, the new owner must demonstrate compliance with the financial assurance requirements for the facility within six months of acquiring the facility. 30 Tex. Admin. Code § 305.64(g).

**B.    Persons that cause, suffer, allow, or permit a violation of a compliance plan and related rules are subject to civil penalties under the Texas Water Code**

The State's claim against Morello is based on Section 7.102 of the Texas Water Code, which provides:

> A person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit relating to any other matter within the commission's jurisdiction to enforce, ... shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper. Each day of a continuing violation is a separate violation.

*See also* Tex. Water Code § 7.101. The provision imposes civil penalties on individual persons rather than assessing a collective penalty per non-compliant event. Each actor proven to have caused, suffered, allowed, or permitted a violation is subject to a civil penalty of no less than $50 per day per violation.

**II.    Background of this facility and its environmental conditions**

**A.    Morello's purchase of the facility and transfer to White Lion**

On February 27, 2004, Bernard Morello entered into an agreement to purchase real property, including a closed pipe manufacturing facility located at or about 2010 Spur 529 at Scott Road in Rosenberg, Fort Bend County, Texas, from Vision Metals, Inc. ("Vision").[2] (CR 604-627). As discussed below, Vision held various post-

---

[2] Vision had filed for bankruptcy and was a debtor in possession of the property under the U.S. bankruptcy code.

closure care permits with the TCEQ, including a compliance plan governing long-term monitoring and cleanup of contaminated groundwater at the facility. (CR 727-756, and CR 758-789). After Morello learned more about the environmental obligations that he had assumed, he negotiated changes to the real estate agreement, which included a reduction in the purchase price from $650,000 to $150,000. (CR 628-634). Morello paid the purchase price himself. (CR 881).

On April 2, 2004, Morello formed White Lion as a single-purpose entity to hold the facility. (CR 636-638). White Lion's address is the same as Morello's residence in Houston, Texas. (CR 643 at 6:23-25). White Lion has no company agreement, operating agreement, and does not maintain minutes or conduct meetings. (CR 644 at 11:9-16 and CR 672 at 102:11-13). Morello is the sole manager, sole owner, sole employee (other than periodic temporary project-specific contract laborers), and sole decision-maker of White Lion. (CR 646 at 25:13-21; CR 647 at 26:22-24, CR 648 at 27:2-5; CR 655 at 66:3-16; and CR 672 at 102:11-13; *see also* CR 637, Article VI, at 2 (Morello is listed as the sole manager)).

On April 5, 2004, Morello assigned all of his rights, duties, and obligations under the real estate agreement to White Lion. (CR 684). On that same day a Special Warranty Deed was filed, which transferred the real property to White Lion. (CR 686-692). White Lion's only asset is the facility that is the subject of this suit.

**B.    At the time it was purchased, the facility contained several closed hazardous waste units and a plume of contaminated groundwater requiring long-term management and monitoring**

When operational, the facility generated hazardous wastewater that was treated in an on-site wastewater treatment system, which included five surface impoundments on the property.  (CR 743, CR 752, and CR 760).  The prior owner/operator discovered that these wastewater impoundments were a source of groundwater contamination including elevated concentrations of cadmium, cobalt, lead, barium, chromium, nickel, silver, zinc, iron, sulfate, and acidic compounds.  (CR 695).

In 1988, the TCEQ issued Hazardous Waste Permit No. 50129-001 ("Permit") to manage closure and long-term care of the wastewater impoundments. (CR 727-756 and CR 695).  As part of the closure, the wastewater impoundments were stabilized with additives and covered with a cap consisting of four feet of clay and a two-foot vegetative cover.  (CR 743 and CR 695).  The Permit addresses various long-term obligations for maintaining the integrity of the closed wastewater impoundments.  (CR 731, CR 738-746, and CR 756).

Contemporaneously, the TCEQ issued Compliance Plan No. 50129 ("Compliance Plan") to specifically address monitoring and cleanup of contaminated groundwater beneath and about the wastewater impoundments. (CR 758-789 and CR 695).  The Compliance Plan imposes various long-term

corrective action obligations to address the plume of contaminated groundwater at the facility, including, but not limited to:

- implementing and maintaining a corrective action program and system to prevent hazardous constituents from exceeding concentration limits by remediating and/or containing elevated concentrations of cadmium, cobalt, lead, barium, chromium, nickel, silver, and zinc in the groundwater at the facility, downgradient of the facility's boundary, and beyond the facility's boundary (Compliance Plan at Sections II.B-F, IV, V, VIII, and Table I, at CR 761-762, 764-766, 773-775, and 779; *see also* 30 Tex. Admin. Code §§ 335.166(1), 335.166(2) and 335.166(5));

- implementing and maintaining a groundwater monitoring program and system to demonstrate the effectiveness of the corrective action program (Compliance Plan at Sections II.A-B, and VI, at CR 761 and 766-770; *see also* 30 Tex. Admin. Code § 335.166(4));

- ensuring that all corrective action system components are "maintained in a functional and leak-free condition" (Compliance Plan at Section V.B.2, at CR 766);

- submitting to the TCEQ annual reports concerning the effectiveness of the corrective action program, submitting to the TCEQ semi-annual groundwater sampling and analysis reports, and maintaining "all monitoring, testing, analytical, and inspection data obtained or prepared pursuant to the requirements of [the] Compliance Plan" at the facility (Compliance Plan at Sections VI.C and VII.B-C, at CR 767-769 and 771-773; *see also* 30 Tex. Admin. Code § 335.166(7)); and

- providing and maintaining financial assurance in an initial amount not less than $574,000 (Compliance Plan at Section XI, at CR 777).

The groundwater corrective action system consisted of a network of twenty-one groundwater monitoring wells (to monitor the migration and concentrations of contaminants). (CR 695, CR 780, and CR 784). In addition to monitoring the contamination plume, groundwater was pumped from five recovery wells and treated in an on-site process wastewater treatment system, which included a unit

called the Acid Neutralization Treatment System or ANTS. (CR 695-696; and Compliance Plan at Section II, Table II and Attachment A, at CR 761-762, 780, and 782-785). Although contamination remained in the groundwater in 2004, the corrective action system was effective in containing the spread of the contaminated groundwater plume, as well as reducing the level of contamination in groundwater at the facility over-time. (CR 696 and 699-710).

## C.   Morello's initial strategy of delaying compliance

The record reflects that after acquiring the facility and transferring it to his single-purpose entity, Morello adopted a strategy of delay to initially avoid compliance. In his only act of timely and affirmative compliance, on May 18, 2004, Morello filed the paperwork necessary to transfer the Compliance Plan to his single-purpose entity. (CR 791-807). On July 23, 2004, the TCEQ approved the transfer and issued a revised Compliance Plan naming White Lion as the permittee and site owner. (CR 818-819). In the cover letter approving the transfer of the Compliance Plan to White Lion, the TCEQ reminded Morello that White Lion had

> not yet provided financial assurance as required under 30 TAC Chapter 37, Subchapter P. As allowed under 30 TAC §37.81, the financial assurance presently provided by Vision Metals, Inc. will remain in effect until the Executive Director determines that White Lion Holdings, LLC is in compliance with Chapter 37, Subchapter P. In accordance with 30 TAC §305.64(g), White Lion Holdings, LLC must demonstrate compliance with the requirements of Chapter 37, Subchapter P, within six months of the date of the change of ownership or operational control of the facility.

(CR 816-817). Morello did not meet the six-month deadline for compliance with the financial assurance requirements and sought to delay compliance with the Compliance Plan as a whole. Morello proposed to investigate the feasibility of an alternative remedy to the current pump-and-treat system. (CR 821-822). In a letter to the TCEQ, Morello stated:

> "I am respectfully requesting TCEQ initially provide an additional 120 days from the July 30, 2004, (revised) deadline to respond to your April 27, 2004, letter, in order to prepare the requisite analyses/documentation to support an application for a major amendment to the permit/compliance plan, which I intend to submit as expeditiously as possible."

(CR 822).[3] The TCEQ denied Morello's request to further delay providing financial assurance as required by 30 Tex. Admin. Code § 305.64(g), but granted him a limited extension by which to complete his investigation and to submit an amendment to the Compliance Plan. (CR 828-829 and CR 831-832). Sections XII.D.-E. of the Compliance Plan sets forth that any changes to the corrective action system or any term of the Compliance Plan may be accomplished only though written application

---

[3] Morello also reached out to the United States Environmental Protection Agency, but that agency, which had no authority over the facility, repeatedly rejected Morello's efforts to utilize the EPA as a quasi-consultant and trump over the TCEQ's authority at the facility. To end the repeated contact, the EPA ultimately had to explain this in a 2007 letter to Morello. (CR 825-826).

for approval to the TCEQ. (CR 777-778).[4] Until such time as the amendment proceeds through public notice and comment and is approved by the TCEQ, the permittee is required to fully comply with the Compliance Plan as written.

The TCEQ repeatedly requested Morello's compliance. (CR 834-836, CR 838-841, and CR 844-865). However, Morello never submitted to the TCEQ, individually or on behalf of White Lion, any application for an alternative remedy, never submitted to the TCEQ any application to amend the Compliance Plan, never provided financial assurance as required, and opted to ignore the TCEQ and the compliance obligations at the facility. (CR 696-697).

Thereafter, Morello ensured that nothing would be done to comply with the terms, conditions, and limitations set forth in the Compliance Plan. It was not until the State obtained a judgment against White Lion in September 2013 that Morello

---

[4] Sections XII.D.-E. of the Compliance Plan provide:

D. Compliance Plan Modification or Amendment. If the Permittee determines that the Corrective Action Program, Compliance Schedule, or Financial Assurance required by this Compliance Plan no longer satisfies the requirements of 30 TAC § 335.165, § 335.166 or § 335.167, the Permittee must, within ninety (90) days of making this determination, submit an application for a modification or amendment to make any appropriate changes to the Compliance Plan which will satisfy the regulations. Any application to modify or amend the Compliance Plan shall be accomplished in accordance with provisions of 30 TAC 305 Subchapter D and submitted to the Industrial and Hazardous Waste Permits Section, Permits Division, Mail Code MC-130, Texas Natural Resource Conservation Commission in Austin, Texas.

E. Any changes to the Corrective Action or Ground-Water Monitoring Systems are subject to Executive Director's approval.

began to initiate any efforts toward compliance, though even those efforts were self-serving and incomplete. (CR 651 at 54:8-11, and CR 696-697).

**D. Under Morello, the groundwater monitoring and treatment system rapidly deteriorated and was ultimately destroyed**

The record reflects that Morello did not spend time or money on compliance primarily because, in his mind, compliance did not "seem like it was a big subject [to the State of Texas]." (CR 674 at 105:5-7 and generally CR 673-675 at 104:6-106:14). Despite spending between 60-80 hours a week at the facility, under Morello's watch, conditions of the monitoring and pump-and-treat system rapidly deteriorated. (CR 653-654 at 64:17-25-65:1-11). In 2008, a TCEQ representative met with Morello and inspected the facility. (CR 844). The TCEQ inspector observed that the facility still had not complied with any of the requirements in the Compliance Plan, had not submitted any of the required reporting requirements set forth in Section VII.B of the Compliance Plan, had not taken any groundwater samples, had not repaired any of the groundwater recovery wells that had ceased functioning, and had completely stopped maintaining and operating the entire treatment and monitoring system. (CR 844-845 and CR 850-855).

On July 29, 2013, the TCEQ inspector returned to the facility and met with Morello. (CR 845-847). The TCEQ inspector observed that the facility still had not performed any of its obligations under the Compliance Plan, and that Morello and White Lion had removed or allowed to be removed the entire groundwater

- 13 -

monitoring and corrective action system at the facility. (CR 845-848). Indeed, of the twenty-one monitoring wells and five recovery wells installed on the facility, the TCEQ inspector was able to locate only one of the wells on the site because all of the well heads had been improperly chopped off or otherwise removed, and all that remained of the wells, if anything, were open, improperly abandoned borings into the earth. (CR 845-847 and CR 857-865).

Section V.B.3 of the Compliance Plan requires that the TCEQ be notified prior to any changes to the corrective action system (such as deactivating a well), and, in accordance with Attachment B, ¶ 14 of the Compliance Plan, any well that is abandoned must be abandoned and plugged in accordance with the requirements of 16 Tex. Admin. Code ch. 76 (formerly 30 Tex. Admin. Code ch. 238). (CR 766 and CR 788-789). The record reflects that Morello caused White Lion to not adhere to these requirements. (CR 845-848, CR 664, and CR 668-669).

**E. The record demonstrates that Morello was personally involved with the operation of the facility and admitted taking affirmative action thwarting and preventing compliance**

No one other than Morello made decisions regarding the operation of the facility. Morello admitted the following:

- he was the sole person responsible for overall operation of the facility and since approximately mid-2004 to September 2014, Morello spent/spends "most weekdays and oftentimes on Saturday ... sometimes 60, 80 hours a week" at the facility cleaning, operating, and managing the facility (CR 653-654 at 64:17- 65:11);

- he was the only person at the facility responsible for making decisions concerning environmental compliance (CR 655 at 66:3-16);

- he was the only person who would meet with and correspond with the TCEQ (CR 660 at 72:17-19; CR 661 at 73:2-10; and CR 662 at 75:12-14);

- he was the only person responsible for submitting reports required under the Compliance Plan (CR 663 at 81:8-15);

- he was the only person responsible for ensuring the monitoring wells in the corrective action system would not be destroyed (CR 664 at 86:17-20);

- he was the only person responsible for maintaining, repairing, and operating the corrective action system wells (CR 664 at 86:17-20 and CR 676 at 108:10-19); and

- he was the only person responsible for making decisions concerning maintaining, repairing, and operating the corrective action system (CR 667 at 93:2-5 and CR 676 at 108:10-19).

The record reflects that Morello spent money "cleaning and managing the site," however, such expenditures were not made to ensure compliance with environmental requirements, but to make the facility "presentable, enticing for industry or storage to lease." (CR 651 at 54:20-21 and CR 669 at 95:17-21). The presence of long-term treatment and monitoring systems made the facility less "enticing," (CR 665 at 88:17-22), and Morello took affirmative, personal actions to remove or mask the environmental conditions at the facility. For example:

- Morello failed to disclose to his general liability insurance provider the presence of the waste lagoons and contaminated groundwater (CR 878, Question 3, under subheading, "General Information": "Do/have past, present or discontinued operations involve(d) storing, treating, discharging, applying, disposing, or transporting of hazardous material? (e.g., landfills, wastes, fuel tanks, etc.)," Morello's response: "No.");

- Morello personally removed the facility's domestic wastewater treatment plant from the facility because, among other reasons, "it was an eyesore" (CR 809-810 at 190:14-191:20);

- Morello personally removed the ANTS from the facility even though it was functional when he took control of the facility (CR 811-812 at 236:12-237:2);[5]

- Morello personally threw away, or directed to be thrown away monitoring well protective housing caps (CR 668-669 at 94:24- 95:9); and

- Morello never notified the TCEQ that any part of the corrective action system had been disabled, damaged, destroyed, or removed (CR 652 at 62:8-11 and CR 671 at 101:5-8).

Morello personally removed the ANTS (the wastewater treatment system), which was the only authorized means for treating contaminated groundwater on-site at the facility, and he allowed every groundwater well to be removed. This prevented White Lion from complying with the Compliance Plan. (CR 811 at 236:12-25; and Compliance Plan Section III.B at CR 762). Morello's actions to destroy or allowing to be destroyed these components came after the State filed suit in this matter. (CR 844-848).

---

[5] Incidentally, Morello explained that his decision to remove the ANTS had nothing to do with any of his assertions that the entire corrective action system was destroyed by other third parties removing other equipment from the site shortly after the bankruptcy auction. *See e.g.* CR 809 at 190:4-7 ("ANTS is gone. The sewer treatment plant is gone. The fuel storage area is gone. All that. I was going to do that anyway. That had nothing to do with any of the defendants' damages."); CR 880 at 27:13-25, 28:21-24; and CR 881-882 at 68:22-69:17 ("No. It [the ANTS] was not broken" and admitting he personally removed it and sent it to a landfill).

The record reflects that Morello also operated under the mistaken belief that if he could maintain a level of deliberate ignorance, he could avoid personal responsibility for compliance. For example:

- Morello did not have the personal expertise to manage environmental compliance at the facility and made no effort to educate himself (CR 659 at 70:1-11);

- Morello asserted he never read the Compliance Plan until after the State obtained judgment against White Lion in September 2013 (CR 660 at 72:11-16 and CR 663 at 81:10-15 ("I didn't read this [the Compliance Plan] until last year. ... If you don't know something, you can't submit something."));

- Morello did not retain professional expertise to assist with managing environmental compliance at the facility until September 2013 (CR 645 at 24:21-23; CR 649 at 28:8-12; CR 657-658 at 68:24- 69:1-3; CR 659 at 70:8-11; and CR 660 at 72:1-5); and

- Morello never investigated how much it would cost to repair or rehabilitate the monitoring wells in the corrective action system (CR 670 at 100:23-25).

The record shows that Morello individually through deliberate omissions or affirmative conduct: permitted White Lion to not obtain financial assurance, (CR 650 at 40:19-22); allowed the corrective action system to be destroyed and/or removed from the site during his management and operation of the site, (CR 666 at 91:17-20 and CR 667 at 93:2-13); and permitted White Lion to not repair/replace the corrective action system. (CR 656 at 67:21-23 and CR 668 at 94:4-7).

**F.     The District Court granted summary judgment first against White Lion, then, after additional discovery was completed, against Morello**

The State filed suit against White Lion in 2006, added its claims against Morello in 2007, and amended its petition in 2008. (CR 4-15; CR 19-30; CR 33-43). The District Court granted summary judgment against White Lion on September 19, 2013, and it also granted the State's motion for severance and severed White Lion from the case to make the summary judgment a final judgement. (CR 563-568).

Discovery and settlement discussions continued in the Morello matter, including additional written discovery, culminating with the deposition of Morello in September 2014.[6] The deposition transcript of Morello was certified on October 31, 2014, (Supp. CR 40-45), and three weeks later, the State filed a motion for summary judgment against Morello. (CR 569-893). The hearing on the summary judgment was delayed when one of Morello's many counsel abruptly left the case. (Supp. CR 46-51). The hearing was ultimately held on February 19, 2015. (Supp. CR 53-54). The trial court released a letter granting the summary judgment, (CR 1400), however, Morello resisted entry of a judgment. (CR 1401-1404). On April 14, 2015, after additional briefing and a hearing to consider Morello's

---

[6] Discovery was significantly delayed by Morello. (Supp. CR 17-20). The timing of the deposition was also delayed by Morello's refusal to agree to a date. Once a date for the deposition was ultimately established, Morello sought to further delay the deposition at the final hour. (Supp. CR 21-39).

objections and request for reconsideration, (CR 1405-1456), the trial court entered final judgment. (CR 1457, CR 1458-1462). The District Court then denied Morello's motion for new trial. (CR 1463-1748, CR 1749-1766; CR 1767-1768, and CR 1769).

## STANDARD OF REVIEW

### A.  Traditional motions for summary judgment are reviewed de novo

This Court reviews a grant of summary judgment *de novo*. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215-16 (Tex. 2003). An element is conclusively proved if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

The reviewing court must consider all evidence in the light most favorable to the non-movant, indulging every reasonable inference in favor of the non-movant, but may not ignore undisputed evidence in the record that is favorable to the movant. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756-57 (Tex. 2007). If a movant proves the essential elements of its affirmative claim, it is entitled to summary judgment unless the non-movant presents evidence raising a genuine issue

of material fact. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). Motions and "[p]leadings do not constitute summary judgment proof." *Id.*

The reviewing court may consider only evidence and arguments expressly presented at the summary judgment hearing. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Specifically, "issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion…." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Clear Creek Basin Auth.,* 589 S.W.2d at 678 ("The written answer or response to the motion must fairly apprise the movant and the court of the issues the non-movant contends should defeat the motion.").

When, as in this case, the District Court's order granting final summary judgment does not specify on what ground it granted summary judgment, summary judgment shall be affirmed if any of the grounds presented in the summary judgment motion are meritorious. *See Provident Life & Accident Ins. Co.,* 128 S.W.3d at 216.

**B.    Motions for new trial are reviewed for abuse of discretion**

New trials may be granted for good cause only. TEX. R. CIV. P. 320. The decision of whether to grant or deny a motion for new trial is within the trial court's

discretion. *See Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 720-21 (Tex. 2003). "When a motion for new trial is filed after summary judgment is granted, the trial court may only consider the record as it existed prior to granting the summary judgment." *Laurel v. Herschap*, 5 S.W.3d 799, 802 (Tex. App.—San Antonio 1999, no pet.). "It is not an abuse of discretion for the trial court to refuse to consider material filed after the summary judgment hearing." *Hill v. Milani*, 678 S.W.2d 203, 205 (Tex. App.—Austin 1984), *aff'd*, 686 S.W.2d 610 (Tex. 1985).

## C.      Orders of severance are reviewed for abuse of discretion

A trial court has broad discretion to consider severance of joined cases. When reviewing a trial court's decision to grant severance, this Court considers whether the trial court has abused its discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

## SUMMARY OF THE ARGUMENT

The Water Code imposes liability on any person, including corporate representatives that cause, allow, or permit a violation of an environmental permit or law. Whatever liability shield a member of a limited liability company may hold affords no protection when that member personally causes, allows, or permits a violation of law to occur. Morello, as the sole member, employee, owner, and decision-maker of White Lion, is a person that caused, suffered, allowed, and/or permitted his company to violate a Compliance Plan issued by the State's environmental agency and related rules for over a decade. He personally and solely participated in every decision to not comply with the Compliance Plan, admitted to personally removing portions of the groundwater monitoring, recovery, and treatment systems (after suit was filed by the State in this case), and was personally and solely responsible for not effectuating repairs to damaged or removed components. Under his careful watch, Morello ensured his company would never monitor or treat a single drop of contaminated groundwater or submit a single required monitoring report to the State. Morello's excuses of deliberate ignorance of the law, lack of sophistication, third party interference, and other financial priorities offer no shield to his personal liability in this matter.

Under the overwhelming avalanche of evidence, the District Court properly granted summary judgment against Morello. Morello's late complaints about

severance of his case from that of White Lion's came too late and his argument that a new report obtained by his consultant nearly 11 years after he first promised the State to obtain such information was properly rejected by the District Court.

## ARGUMENT AND AUTHORITIES

*Issue 1:*    *The final judgment issued by the District Court granting summary judgment should be affirmed because there are no fact questions – Bernard Morello admitted every essential fact establishing his individual liability for causing, allowing, or permitting violation of a Compliance Plan governing the management of contaminated groundwater at a former manufacturing facility.*

## I.    The State conclusively proved that Morello caused, allowed, or permitted violation of the Compliance Plan for over a decade  (Response to Appellant's Issue One)

This matter was brought against Morello because of his personal, egregious actions in precluding his company from coming into compliance from 2004 and continuing until after the State obtained judgment against White Lion in 2013. The summary judgment evidence and Morello's own admissions conclusively establish that he deliberately prevented White Lion from complying with the Compliance Plan. Indeed, by personally removing the pump-and-treat system and allowing the monitoring wells to be destroyed without repair, Morello ensured it would be impossible for his company to comply. The District Court properly granted summary judgment against Morello.

**A. Morello cannot avail himself of the liability shield typically afforded members of a limited liability company because he personally directed, participated in, had knowledge of, and assented to acts and omissions that caused White Lion to violate the Compliance Plan**

The structure of a limited liability company is intended to shield its members from the liabilities and obligations of the company. *See* Tex. Bus. Orgs. Code Ann. § 101.114 ("Liability for Obligations. Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court."). However, this statutory shield does not deflect the liability from those members, officers, and other agents that personally commit fraudulent or wrongful acts.

Indeed, it is the general rule in Texas that an individual is personally liable for fraudulent or wrongful acts which he directs, participates in, or has knowledge of and assented to during his employment. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *see also Dixon v. State*, 808 S.W.2d 721, 723 (Tex. App.—Austin 1991, writ dism'd w.o.j) (affirming summary judgment against company president for knowingly participating in and directing the company's wrongful tax conversion). This principle applies equally to corporations as well as limited liability companies. Morello's attempt to distinguish a limited liability company from other corporate entities is a distinction without a difference when the direct, individual liability of a corporate officer is at issue.

- 25 -

## 1. *In cases regarding the direct, individual liability of an officer of a limited liability company, piercing the corporate veil is not required*

Morello is correct that the State did not plead, argue, or prove "any type of veil-piercing theory" in this case. (Appellant's Brief at 12-13). Nor was the State required to so plead in its claim for direct liability against Morello. The corporate veil is not required to be pierced in an action brought against an individual corporate agent for his fraudulent or wrongful acts. *See Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.) (a member of a limited liability company can be held personally liable for his own fraudulent or wrongful acts and the corporate veil is not required to be pierced).

Morello's reliance on *Shook v. Walden* for his proposition that veil piercing is the only way to hold a corporate officer of an LLC liable is misplaced. (Appellant's Brief at 12). The court in *Shook* never reached the claims of direct, individual liability against Shook because those issues were not before the court – only the jury's veil piercing findings were before it. 368 S.W.3d 604, 610-11 (Tex. App.—Austin 2012, pet. denied) ("There is no dispute that, in the absence of affirmative jury findings on any direct liability theories against Shook, the district court's judgment imposing liability against him rests entirely upon the three alternative findings relating to alter-ego, single-business-enterprise and 'sham' theories for disregarding S&J's separate existence – a/k/a "piercing" its "veil" – and imposing the company's obligations under the Construction Contract on him individually.").

The opposite is at issue here – the only issue before the Court is the State's statutory cause of action against Morello individually. Veil piercing is not an issue, and therefore, *Shook* is simply not germane.

## 2. *Corporate officers of limited liability companies may be held directly liable for their own wrongful acts*

Morello's attempt to distinguish a limited liability company from other corporate entities is a distinction without a difference when the direct, individual liability of a corporate officer is at issue. The direct liability exception articulated by the Supreme Court in *Leyendecker* has been consistently followed by courts in cases involving corporate officers of limited liability companies. *See e.g., Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 201 and 210 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (affirming judgment against president of an LLC in tort action based on knowing participation in wrongful acts); *Sanchez v. Mulvaney*, 274 S.W.3d at 712 (permitting claims against LLC member based on his own liability to proceed); *Coleman v. Savoie*, No. 03-97-00548-CV, 1998 WL 305322 at *4 (Tex. App.—Austin 1998, no pet.) (affirming judgment against employee of LLC and limited partnership for personally obstructing an easement by constructing a sidewalk on the easement). Morello cites to no cases suggesting otherwise, and his sweeping assertion that officers of limited liability companies are immune from liability for environmental harms they help cause would eviscerate the State's environmental enforcement scheme and encourage creation of a system of

- 27 -

closely held companies operated by individuals free to cause violations of environmental requirements without personal recourse. This was not the intent of the Legislature when it provided that "any person" who causes, suffers, allows, or permits a violation may be held liable under Chapter 7 of the Water Code.

**3.** ***Section 7.102 of the Texas Water Code imposes liability against any person, including a corporate officer of a limited liability company, who causes, allows, or permits a violation of a state environmental permit or law***

The State's claim against Morello is based on its enforcement authority under Chapter 7 of the Texas Water Code. Section 7.101 of the Texas Water Code provides that no person may "cause, suffer, allow, or permit a violation of a statute within the commission's jurisdiction or a rule adopted or an order or permit issued under such a statute." Section 7.102 of the Texas Water Code provides that any person who causes, suffers, allows, or permits such violations "shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation. . . . Each day of a continuing violation is a separate violation." These provisions of the Water Code impose penalties on individual violators rather than assessing a collective (joint and several) penalty per non-compliant event. Each actor proven to have caused, suffered, allowed, or permitted a violation is subject to a separate penalty for his own violation.

Morello vaguely asserts in his severance argument, discussed in greater detail below, that section 7.102 limits the State to enforcing against only one single person,

even if multiple persons were responsible for a non-compliant event. (Appellant's Brief at 30-35). This is an erroneous interpretation. The statute encompasses all persons that commit a violation, and each may be held individually liable for his own acts. Tellingly, Morello asserts general arguments and unhelpful principles from tort law, and fails to discuss the key term at issue – the definition of "person" as that term is defined and interpreted by the courts.

The term "person" as used in the Water Code includes "'a corporation…and any other legal entity,' which includes natural persons. Tex. Gov't Code Ann. § 311.005(2)." *State v. Malone Serv. Co.*, 853 S.W.2d 82, 84 (Tex. App.—Houston [14th Dist.] 1993, writ denied). When a statute provides for individual liability through the term "person," as does the Water Code, the State may properly bring separate enforcement actions for a non-compliant event against each and every person who causes, allows, or permits a violation, including both a corporate entity and its principal. *See Miller v. Keyser*, 90 S.W.3d 712, 715-716 and 718 (Tex. 2002) (holding individual corporate agent liable under Texas Deceptive Trade Practices Act, which allows for suits to be brought against "any person"); *White Lion Holdings, L.L.C. v. State*, 2015 WL 5626564 at *3 ("Statutes providing for liability of any "person" in violation allow courts to render judgments against both corporate entities and their agents."). Therefore, when an individual corporate officer takes personal action to violate or direct the violation of state environmental laws or

permits, by taking such action, the individual has cast aside whatever corporate shield he may have had as an employee and can be held personally and individually liable for his own actions. *See Leyendecker & Assocs., Inc.*, 683 S.W.2d at 375 (Tex. 1984).

In *Malone*, a corporate president and plant manager were held individually liable for their actions participating in or directing violations of a deep well injection permit, namely improper disposal of wastes into a closed impoundment. *See Malone,* 853 S.W.2d at 83-84. The relevant statutory provision at the time, Tex. Water Code § 27.101, is similar to § 7.102 in that liability for a penalty is triggered when a "person" violates any permit provision. *See id.* at 84. The court examined whether the officer was liable under the elements set forth in the statute for his own acts of non-compliance even though he did not hold the permit at issue (the company held the permit). *See id.* at 84-85. The court rejected the corporate officers' argument that "any person" excludes individuals who do not hold a permit. *See id.* at 85 (also citing to federal court decisions applying the personal participation doctrine to 'persons' who were not permit holders.). A similar finding is applicable here.

Morello asserts that the court in *Malone* looked only to whether the corporate actors committed "environmental torts," which Morello goes on to define from a repealed section of Chapter 33 of the Civil Practice and Remedies Code relating to proportionate responsibility in tort cases. (Appellant's Brief at 25). Morello's

argument and link to this definition is erroneous and was not germane to the *Malone* case or this matter. The court in *Malone* simply determined that the corporate officers could be held liable for their own violations of the statute at issue, and affirmed the trial court's judgment based on the elements of the statute at issue (*i.e.*, violation of a permit). Although the statute at issue in *Malone* concerned different statutory elements and acts than those of Morello, the definition and application of the term "person" is the same, and therefore the underlying principle of individual liability remains applicable as to the statutory cause of action against Morello.

Morello's attempts to draft his definition of an "environmental tort" into section 7.102 of the Water Code is without any basis and would distort the clear and unambiguous statutory elements of the statute. Morello's actions are reviewed, like the corporate officer's action were viewed in *Malone*, not in the context of Morello's tort definition, but in the context of whether Morello's actions (or inactions) meet the elements of the statute – here causing, suffering, allowing, or permitting a violation of a permit or law. Tex. Water Code § 7.102. Morello admitted such violations. Other evidence further established his liability. No other reasonable conclusion could be drawn from the evidence, and summary judgment was proper.

For example, among other things, Morello: failed to direct his company to obtain the necessary expertise for his company to timely comply; failed to commit the resources necessary to repair, operate, and maintain the groundwater monitoring

and treatment system; failed to commit the resources necessary to timely achieve compliance; failed to direct the company to provide financial assurance, and failed to direct the company to complete necessary sampling, monitoring, and reporting of groundwater at the facility. These blatant omissions amount to affirmative conduct.

In addition to making management decisions to not comply Morello also undertook direct, individual actions that violated the Compliance Plan. For example, in 2006 and early 2007, without first seeking permission from the TCEQ and after suit was first filed in this matter, Morello himself removed the system used to treat contaminated groundwater pumped from the ground. At the time he removed it, the treatment system was not broken and, therefore, was not damaged or destroyed by third parties removing equipment in 2004 as alleged by Morello. He also failed to direct his company to repair monitoring well housings after the wells were purportedly damaged or "shredded" by "mowers." Instead, Morello himself picked up the pieces of the metal housing covers and simply threw them away, leaving unprotected borings in the ground as observed by the TCEQ inspector in July 2013. All of these wells, which were clearly visible and in place as late as 2008 (two years after the State first filed suit), were each ultimately demolished under Morello's watchful eye by July 2013. The monitoring and recovery wells were not removed or destroyed by third parties removing equipment in 2004 as alleged by Morello.

***4.*** ***Direct, individual liability of an officer for causing, allowing, or permitting a violation of an environmental permit or statute does not require additional statutory language to overcome a corporate officer's statutory liability because the officer's liability is based on his own conduct as an individual, not as an agent of the limited liability company***

Morello discusses *Health Enrichment & Longevity Inst., Inc. v. State*, No. 03-03-00578-CV, 2004 WL 1572935, at \*8 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) to support his proposition that only an express statutory exception can waive the "statutory liability shield otherwise afforded to officers of corporations and members of LLC's." (Appellant's Brief at 27). This assertion is wrong, as previously discussed, the Water Code imposes liability against any person, which includes individuals. No additional language is required in the statute for a person, even a corporate representative, to be found liable for his own violations.

Furthermore, Morello's discussion of *Health Enrichment* is wrong. The opinion affirms a judgment against a company and its sole owner for civil penalties and attorney's fees under Health & Safety Code § 247.021. In addition to various claims against the company, the State obtained judgment against the sole owner of the company for her failure to submit a license application. Her failure led her company to operate without a license in violation of state law.

Morello asserts, without citation to any language in the opinion, that the owner's liability was based on Section 247.045(h) of the Health & Safety Code, which provides that if a company found liable fails to pay any amount owed, then

the State may seek satisfaction from the owner, among other persons or corporate entities. However, in the court's decision there is no mention of this provision, nor is there any discussion that the State was simply seeking satisfaction of an unpaid debt of the company from the owner. Instead, the court clearly describes that the owner of the company failed to submit a complete application, which led to the company operating without a license. It was against the owner's own individual violation that the State brought its action against the owner.

## B. Morello admitted that he caused, allowed, and/or permitted White Lion to not comply with the Compliance Plan and admitted to taking specific actions that prevented his company from complying

The summary judgment evidence conclusively establishes that since assuming ownership, operation, and control of the facility, Morello has ensured that White Lion would not take a single groundwater sample, treat a single drop of contaminated groundwater, submit any required report to the TCEQ, or repair, replace, and maintain the corrective action system on the facility. (CR 694-697; CR 843-865). Indeed, Morello himself personally removed the groundwater treatment system (the ANTS) from the facility, (CR 811-812), discarded protective metal monitoring well housings into the trash, (CR 668-669), and prevented White Lion from taking steps to maintain, repair, and replace the corrective action system on the facility (CR 645; 649; 655-57; 659-661; 666-668; 670). No one other than Morello could cause White Lion to comply, (CR 655; CR 660, CR 662-664; CR 667-68; CR 676), and he chose,

through deliberate actions or affirmative neglect, to have White Lion not comply. The District Court properly granted summary judgment and assessed civil penalties against Morello for this violation.[7]

## C. Morello admitted he caused, allowed, and/or permitted White Lion to not post financial assurance

Financial assurance must be established and maintained for the corrective action program and system at the facility. *See* 30 Tex. Admin. Code § 335.167(b). The financial assurance must be secured and maintained in an amount "not less than $574,000." (Compliance Plan Section XI, at CR 777). A new owner or operator of a facility must demonstrate compliance with the financial assurance requirements for the facility within six months of the change in ownership or operation control. *See* 30 Tex. Admin. Code § 305.64(g). After acquiring the facility, Morello had it transferred to White Lion on April 6, 2004. Therefore, Morello was required to ensure that White Lion demonstrated financial assurance no later than October 6, 2004.

As set forth in 30 Tex. Admin. Code § 37.6021, Morello could have directed White Lion to demonstrate financial assurance through a trust fund, surety bond,

---

[7] In his brief, Morello has not challenged the amount of the civil penalty assessed. The State stipulated to the minimum civil penalty of $50 per day provided by Tex. Water Code § 7.102. When the Legislature prescribes a minimum amount for civil penalties, the Court does not have discretion to award a penalty below that minimum. *See State v. City of Greenville*, 726 S.W.2d 162, 169-170 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). The stipulation removed any fact issue on the appropriate penalty to assess against Morello.

irrevocable standby letter of credit, insurance, a financial test, or a corporate guarantee. *See also* 30 Tex. Admin. Code Chapter 37, Subchapter C (§§ 37.200-.261). Instead he did nothing. Morello ignored the TCEQ, ignored the subsequent notice of violation, continued to ignore the State even after it filed suit, and has never allowed his company to provide financial assurance. (CR 694-697; CR 843-848). Morello admitted that as of September 19, 2014, no financial assurance had been posted. (CR 650). The District Court properly granted summary judgment and assessed civil penalties against Morello for this violation.

**D.     Compliance with the Compliance Plan was not excused**

Morello does not discuss in detail his third-party excuse defense, or other defenses raised at the District Court, except in passing on page 20 of his brief and in his Statement of Fact at pages 2-4. By not properly briefing the issue in his legal discussion, Morello has waived these issues on appeal. Nevertheless, in an abundance of caution, the State provides this response.

Morello as the sole member, employee, owner, and decision-maker of White Lion, is a person that caused, allowed, and/or permitted White Lion to violate the Compliance Plan and related rules for over a decade. He personally and solely participated in every decision to not comply with the Compliance Plan, was personally complicit in the removal of portions of the corrective action system, and was personally and solely responsible for not effectuating repairs to damaged or

removed components. Morello's excuses of ignorance of the law, lack of sophistication, third party interference, and other financial priorities offer no shield to his personal liability in this matter.

**1.    *The Court of Appeals for the First District of Texas has already rejected the defense of excuse and third-party interference in this matter***

In its separate appeal, White Lion raised the same defenses that Morello raised at the trial court. The Court of Appeals for the First District of Texas rejected White Lion's arguments and held that White Lion's compliance was not excused. *White Lion Holdings, L.L.C.*, 2015 WL 5626564 at *6-7 ("We hold that White Lion failed to raise a fact issue with respect to whether its noncompliance with the compliance plan was excused."). There is no reason for this court to disturb the opinion of the First Court of Appeals rejecting the same defenses raised by Morello.

**2.    *The defense of excuse based on commercial and economic impossibility is unavailable in statutory environmental enforcement cases; and even if it were applicable, Morello testified to facts that defeated the defense***

Morello asserted to the District Court that his company's ability to comply with the Compliance Plan was rendered "commercially and economically unachievable because of the damages caused to the facility by … third parties." (CR 914). However, violations of environmental laws are not based on a standard of whether compliance is commercially and economically reasonable. If every defendant in an enforcement case brought by the State were allowed to use his own delay and lack of finances as a sword to defeat the enforcement action, the State

would face great difficulties in sustaining any of its environmental enforcement actions.

Furthermore, third party interference is irrelevant to Morello's (and White Lion's) obligations to comply with the Compliance Plan and afford no defense to his obligations to ensure compliance. His defenses, if any, are limited to those afforded within the Compliance Plan and the Water Code. In particular, if conditions at the facility warranted a change to the Compliance Plan, it was incumbent upon Morello to direct his company to notify the TCEQ and/or seek amendment of the Compliance Plan. *See* 30 Tex. Admin. Code § 335.166(8) and Compliance Plan Section XII.D.- E. at CR 777-778. He did neither. Instead Morello himself admitted to removing or allowing to be removed the treatment system and every groundwater well from the facility after the State filed suit in this matter. (CR 668-669; CR 809-812). Furthermore, no third party prevented Morello from obtaining the required financial assurance or conducting sampling of contaminated groundwater and submitting required reports to the TCEQ.

Morello also alleges that the facility was already in a state of non-compliance when his company took control. (Appellant's Brief at 1). However, the prior owner/operator's compliance history is irrelevant. This enforcement action is for Morello's actions starting when the TCEQ transferred the Compliance Plan from the old owner to his company, and arising from his decision to ignore the obligations

imposed by the Compliance Plan from that time to the date of his deposition in September 2014. Morello was aware of the environmental obligations and conditions when he purchased the facility, and chose to ignore them when he realized it would cost real money to address them.

*Issue 2:*   *Morello waived the issue of whether the District Court properly severed the case against White Lion from the case against him. Even if it were properly preserved, this Court should hold, as the First Court of Appeals did in White Lion's appeal, that severing the two parties was proper both procedurally and substantively.*

## II. The District Court properly severed White Lion to make White Lion's judgment final and appealable (Response to Appellant's Issue Two)

## A. Morello waived complaint about severance because he did not timely challenge the District Court's severance order

Trial courts have jurisdiction to issue severance orders. Indeed, severance is a matter committed to the trial court's discretion and may not be disturbed on appeal absent a showing of abuse of discretion. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. When the District Court granted summary judgment as to White Lion and then severed White Lion, the court was following a common procedure in multi-party cases. It is common (and expected) to sever a single defendant from a case with multiple defendants when summary judgment is granted against one defendant so that case may be appealed. *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525-526 (Tex. 1982) ("A claim may be properly severed [at summary judgment] if it is part of a controversy which involves more than one cause of action, and the trial judge is given broad discretion in the manner of severance and the consolidation of causes."); and *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 812 (Tex. App.—Austin 1997, no writ.) ("Where summary judgment in favor of a single defendant is proper in a case with multiple defendants, severance of that claim is

- 40 -

also proper so that it may be appealed.").[8]  On appeal, it has been confirmed that summary judgment against White Lion was proper.  *White Lion Holdings, L.L.C. v. State*, 2015 WL 5626564.

Complaints about severance can be—and in this case were—waived.  That core principle was noted, albeit in dicta, more than half a century ago when the Supreme Court of Texas stated that "[t]he rule against splitting causes of action . . . is for the benefit of and may be waived by the defendant."  *Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959).  The proper time to challenge the severance was at the time of the State's motion for severance or at the hearing on the motion.  *See Guar. Fed. Sav. & Loan Ass'n v. Horseshoe Operating Co.*, 748 S.W.2d 519, 530-31 (Tex. App.—Dallas 1988, writ granted), *aff'd in part, rev'd in part sub nom. Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652 (Tex. 1990).  Although reversing most of the judgment, the Supreme Court expressly affirmed "that portion of the judgment of the Fifth Court of Appeals" regarding severance.  *Id.* at 659.  The Fifth Court held that even though Guaranty claimed that the severance prejudiced it,

> Guaranty, however, filed no response or objection to Horseshoe's motion for severance.  We conclude that if Guaranty considered severance would act to its prejudice, Guaranty should have made that

---

[8] Morello asserts that the State filed its summary judgment against Morello "thirty-two days after the trial court's plenary power had expired in cause number D-1-GV-13001068)."  (Appellant's Brief at 29).  Actually, the State filed its summary judgment as to Morello nearly a year later, after settlement negotiations did not bear fruit, and following completion of additional discovery.

- 41 -

fact known to the trial court before it ordered severance. Hence, we conclude that the trial court did not abuse its discretion in ordering severance when Guaranty never told the trial court that severance acts to Guaranty's prejudice. Consequently, we conclude that the trial court did not err in ordering severance . . . .

*Guar. Fed. Sav. & Loan Ass'n,* 748 S.W.2d at 531.

Morello declined to challenge the severance at the time the State filed its motion or when the trial court held the hearing at which it granted severance. Indeed, it was not until Morello had judgment granted against him, and only in his motion for new trial, filed some 21 months after the severance was effectuated, did he raise severance as an issue. The District Court did not abuse its discretion in severing the State's claims against White Lion from those against Morello.

**B.     This issue has already been considered by the First Court of Appeals, which has held that severance in this case was proper**

The propriety of the District Court's severance order was raised by White Lion in its appeal, and the First Court of Appeals rejected White Lion's arguments and held that severance was proper. *White Lion Holdings, L.L.C. v. State*, 2015 WL 5626564 at *2-4. Indeed, White Lion's arguments in that appeal generally mirror those of Morello, and they were all rejected by the First Court of Appeals. There is no reason for this court to disturb the holding that severance in this case was proper.

**C.** **The severance was timely. Severing a party after granting summary judgment as to that party is not a "post-submission" severance and the District Court properly ordered severance after granting summary judgment as to White Lion**

Morello asserts that the severance was error because Tex. R. Civ. P. 41 prohibits severance after the case is submitted to the trier of fact. (Appellant's Brief at 32). However, this principle is only applicable when fact issues warrant submission of the case to a trier of fact. Here, the evidence was so overwhelming, that no genuine issue of material fact remained and summary judgment was proper to decide the case without submission to a fact-finder.

If Morello's proposition applied at the summary judgment phase of a case, the legion of decisions affirming severance in multi-party cases after summary judgment would be void. *See e.g., Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733-734 (Tex. 1984) (finding no error in severance of a judgment entered against one of two defendants in a tort case alleging indivisible injury against two wrongdoers); *Guidry*, 944 S.W.2d at 812 (no error in severance of one summary judgment entered in favor of one defendant in a tort case brought by a plaintiff against multiple defendants for a single injury); and *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied) (severance of one plaintiff that obtained summary judgment in a case involving sixteen plaintiffs, all with identical claims against the city, was proper). Furthermore, under Morello's argument, parties seeking summary judgment in multi-party cases would have to first sever, then obtain summary

judgment.  If they did not prevail on summary judgment, they might have to seek to rejoin the case, which is hardly an efficient use of judicial resources.

The District Court did not abuse its discretion in severing White Lion from the case after it granted summary judgment as to that party.

**D.      The suits against White Lion and Morello are separate and distinct and severance was proper to make the judgment against White Lion final**

When considering the propriety of a severance order, courts may consider the following three factors:  (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts or issues.  *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658.  Morello primarily relies upon the third factor and, to make it fit, argues that the claims against Morello and White Lion are too factually interwoven to be separated and that severance improperly splits a single statutory violation that is based on identical conduct.  (Appellant's Brief at 31-32).

White Lion and Morello are two different persons, and each took distinct and separate actions or inactions to cause the violations alleged by the State.  The claims against White Lion and Morello may be under the same statute and concern the Compliance Plan, but the cases are not identical and are based on different conduct and legal principles.  They could have been brought as two separate cases.  The case against White Lion was simpler than that against Morello—it concerned White

Lion's direct and continuing failure to comply with the Compliance Plan. The case against Morello is somewhat more complicated and concerns Morello's deliberate interference with and failure to cause, allow, or permit his company to perform its duties under the Compliance Plan. The suit against Morello necessitated a detailed investigation into his own actions, conduct, and omissions, and also concerned a different period of time.

The severance order was proper to separate and make final the action against White Lion from that pending against Morello and did not result "in duplicitous trials of interwoven or identical issues." *S.O.C. Homeowners Ass'n v. City of Sachse*, 741 S.W.2d 542, 544 (Tex. App.—Dallas 1987, no writ) (severance was proper). The severance benefited White Lion by allowing it to immediately appeal a final judgment, which it did. Critically for the State, a final judgment against White Lion was required so that the injunctive relief awarded (*i.e.*, ordering White Lion to comply with the Compliance Plan) could proceed unanchored by the more complicated issues presented in the case proceeding against Morello. Further delay in obtaining such relief would prejudice the State's ability to enforce the Compliance Plan and its statutes. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d at 658 (the reasons for a proper grant of severance "are to do justice, avoid prejudice and further convenience"). Even if the case was not severed, there would have been no change in the outcome—the case would have proceeded against

Morello as it did. The only difference would have been the significant prejudice to the State in seeking finalization of its injunctive relief against White Lion and further delays in its efforts to achieve compliance in this matter.

**E.     There is no apportionment of liability under the Texas Water Code**

Morello asserts that the District Court misapplied the law when it awarded "damages against White Lion and Morello." (Appellant's Brief at 32). Morello argues that the Court should examine whether the State will be over or under compensated through separate judgments. (Appellant's Brief at 31). Morello's statement and arguments are factually incorrect. This case is not about damages or compensation for an injury. The State sought and obtained civil penalties (not damages) against Morello, and the District Court misapplied nothing in this statutory enforcement action. There is no compensation to the State at issue, merely assessment of a penalty for violations of State law.

Furthermore, Morello's apparent argument for an apportionment of the liability and penalties in this case is erroneous. As previously discussed, the statutory enforcement action was brought by the State against two separate parties— White Lion and Morello. Under the Water Code, each must be found independently liable for the violations alleged, and each is then responsible for whatever civil penalty is assessed by the trial court. There is no apportionment among multiple liable parties contemplated under the Water Code.

The cases that Morello relies on are unhelpful. For example, *Santos v. Holzman* relates to a medical malpractice claim, which includes as an element whether there was a continuous course of treatment that produced an indivisible injury. No. 13-02-662-CV, 2005 WL 167309 at *2 (Tex. App.–Corpus Christi Jan. 27, 2005, pet. denied) (mem. op.).[9] Here, there is no requirement to prove a continuous course of conduct that produced an indivisible injury. This is a statutory enforcement case against two separate parties for their independent actions to cause, suffer, allow, or permit violations of state law. The District Court committed no error in severing the two parties once judgment was obtained against White Lion.

**F.     The civil penalties assessed are not unconstitutionally excessive and penalties assessed against two separate parties do not constitute a double recovery**

Morello alleges that the separate penalties collected from White Lion and Morello, when aggregated, constitute a double recovery, an excessive fine, and violate due process. Morello's arguments are unavailing.

*1.     There was no excessive fine because the District Court awarded only the minimum penalty permitted by section 7.102 of the Texas Water Code*

Here, only the minimum penalty was awarded, negating any concern over excessive fines. *See Newell Recycling Co. v. E.P.A.,* 231 F.3d 204, 210 (5th Cir. 2000) (analyzing a penalty statute authorizing civil penalties up to $25,000 per day,

---

[9] Morello also relies on *Jones v. Ray*, 886 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1994, no writ). However, *Jones* is also a medical malpractice case and is unhelpful here.

the court definitively stated that "[n]o matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment."). As previously discussed, violations of TCEQ permits, orders, and related regulations are subject to a civil penalty of not less than $50 nor more than $25,000 per day of violation. Tex. Water Code § 7.102. The assessment of at least a minimum penalty for each violation and for each day of each violation is mandatory, not discretionary. *See State v. City of Greenville*, 726 S.W.2d 162, 169-70 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

Morello was assessed a civil penalty for two violations, one for violation of the Compliance Plan as a whole from July 23, 2004 (the date the Compliance Plan was transferred to White Lion) until September 19, 2014 (the date of Morello's deposition, at which he admitted the facility remained in complete and total non-compliance); and one for causing, allowing, and/or permitting his company to fail to provide financial assurance as required by the Compliance Plan and related TCEQ regulations from October 6, 2004 until September 19, 2014 (CR 593), which amount to an aggregate civil penalty of $367,250 against Morello[10]—$185,500 ($50 x 3710

---

[10] The State could have received additional continuing violations up to the date of the hearing, however, the State did not revise its motion during the summary judgment hearing. *See* CR 593 at fn. 83 and 84.

days) for violation of the Compliance Plan, and $181,750 ($50 x 3635 days) for violation of the financial assurance requirements. (CR 595).

That the violations continued for so long a period of time was the admitted fault of Morello. Instead of complying, Morello chose to ignore the costs of compliance for nearly a decade, hence the number of days by which the minimum penalty was calculated. He also took actions to perpetuate the violations by:

- ignoring the State and the promises he made to the State to come into compliance and file amendments to alter the Compliance Plan;
- personally removing the treatment system during the course of this litigation;
- personally throwing away monitoring well housing caps and not replacing them;
- under his watch, causing, allowing, or permitting the destruction of every single monitoring and treatment well at the facility;
- not repairing any monitoring or treatment well;
- never allowing his company to sample a single drop of groundwater;
- never allowing his company to submit a groundwater monitoring report to the TCEQ; and
- never allowing his company to post financial assurance.

The penalty assessed against Morello was not excessive. *See Whitney Stores, Inc. v. Summerford*, 280 F.Supp. 406, 411 (D.S.C. 1968), *aff'd* 393 U.S. 9 (1968) (repeated violations resulting in higher fines are the fault of the actor, not the statute).

**2.** ***That White Lion and Morello are related parties does not make a recovery against each party under section 7.102 of the Texas Water Code an impermissible double recovery***

The actions against White Lion and Morello were separate and distinct, and their close relationship does not render the two judgments an impermissible double recovery. The civil penalty statute imposes a civil penalty within the statutory range on each "person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit relating to any other matter ...." Tex. Water Code § 7.102. When there are multiple actors who each independently caused violations to occur, it is appropriate to assess penalties against each for his own conduct to cause, suffer, allow, or permit the violations. That the actors may be related by virtue of a corporate connection does not make the penalty excessive or a double recovery. *See Malone Serv. Co.,* 853 S.W.2d at 84-85.

No federal or state constitutional issues are presented and Morello raises no issue suggesting that reversal is warranted.

**3.** ***Morello has not been deprived of an ability to litigate his defense***

Morello asserts that a penalty is excessive and unconstitutional if "it effectively deprives a citizen of the ability to litigate his defense to such penalty." (Appellant's Brief at 36). However, as discussed above, that is not the case when the statutory minimum penalty is imposed as it was here.

Morello's reliance on *R. Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314 (Tex. 1994) is utterly misplaced. In that case, the Supreme Court of Texas held that a bond requirement that was twice the amount of the disputed tax assessment violated the open courts provision. Even Morello acknowledges that his case "does not present an open courts question." (Appellant's Brief at 36). The action against Morello concerns the imposition of minimum statutory penalties imposed following a finding of liability, and the fact that two different, but related parties, are each independently assessed penalties does not mean such penalties can be aggregated for purposes of constitutional review.

Finally, Morello (and White Lion) have aggressively defended against the State's action, and have challenged and opposed nearly every step in the State's action in both cases. Morello (and White Lion) have at various times in this proceeding employed at least eight attorneys in support of his defense. Morello cannot credibly assert that he has been deprived of his defense. That a party elects to expend significant sums challenging the State's action does not absolve him from paying whatever penalties are assessed for his non-compliance, nor from complying with the State's laws, regulations, and permits. Compliance with the law is not a choice, and that the non-compliance went on for so long was the sole fault of Morello.

*Issue 3*:  *The District Court did not abuse its discretion when it denied Morello's motion for new trial because Morello did not raise any new issues from what was presented at summary judgment.  The evidence included with the motion could have been obtained ten years earlier and Morello's arguments as to the corrective action set forth in the Compliance Plan constituted an impermissible collateral attack on the plan.*

## III.  The District Court properly rejected Morello's request for a new trial based on Morello's lack of diligence in obtaining "new evidence" (Response to Appellant's Issue Three)

The District Court properly denied Morello's motion for new trial and appropriately rejected Morello's assertion that affidavits he included with the motion contained "newly discovered" information.  The District Court stated in its letter explaining its ruling:

> The Court declines to entertain a hearing on Defendant's Motion for New Trial and denies the Motion for New Trial.  The only ground which might require a hearing is the Defendant's assertion that they have "newly-discovered evidence" that merits a new trial.  The purpose of a hearing would be to allow the defendant to present its "newly-discovered evidence"; however, the Defendant has attached affidavits to its motion, so it does not appear that testimony is required.  In addition, the Defendant's alleged "newly-discovered evidence" does not present facts, which if true, would entitle Defendant to a new trial.  The State correctly asserts that this is an improper attack on the TCEQ's Compliance Plan, which was issued to White Lion in 2004.  In addition, the State is correct that Morello has not demonstrated diligence in obtaining the "new evidence."

(CR 1767).  The District Court properly noted Morello's lack of diligence in obtaining the information and correctly concluded that Morello's arguments constituted nothing more than an improper collateral attack on the Compliance Plan

itself. Morello challenges this ruling as an abuse of discretion. However, all the District Court did was exercise its discretion and find the State's argument more persuasive than Morello's. Disagreeing with the ruling is not a demonstration that the District Court acted "without reference to any guiding rules and principles." *Downer*, 701 S.W.2d at 241-42.

**A.** **The information attached to his motion for new trial includes information Morello promised to provide the TCEQ in 2004 and he offers no cogent explanation for why he could not have obtained it sooner**

Morello included two affidavits with his motion for new trial to support an attack on the Compliance Plan itself—namely an argument for a less expansive remedy than what is set forth in the Compliance Plan. However, it was Morello himself that argued for a less expansive remedy when his company first acquired the facility in 2004. (CR 821-822). On July 29, 2004 (six days after the TCEQ approved transfer of the Compliance Plan to White Lion), Morello submitted a letter to the TCEQ asking for additional time (120 days) to study the facility "in order to prepare the requisite analyses/documentation to support an application for a major amendment to the permit/compliance plan, which I intend to submit as expeditiously as possible." (CR 822) The TCEQ granted the extension. (CR 831-832). Morello never submitted an amendment to the Compliance Plan.

Morello provides no cogent reason why he could not have obtained the information he included with his motion for new trial as he first promised the TCEQ

in 2004 or in any other year before the State filed its motion for summary judgment. Morello did not exercise appropriate diligence in obtaining this information and he cannot adequately explain the reasons for the decade long delay in his directing a consultant to conduct an initial study (nor does he adequately explain the continuing delay in directing his company to prepare and submit an amendment to the Compliance Plan). *See White v. Wah*, 789 S.W.2d 312, 320 (Tex.App.—Houston [1st Dist.] 1990, no writ) ("failure of counsel to fully develop available evidence does not constitute 'good cause'"). The District Court did not abuse its discretion denying Morello's motion for new trial. *See Hill v. Milani*, 678 S.W.2d at 205 ("It is not an abuse of discretion for the trial court to refuse to consider material filed after the summary judgment hearing.").

**B.** **Morello's arguments constitute an impermissible collateral attack on the Compliance Plan**

Relying on the Heslep affidavit, Morello argues for the Court to mandate that the District Court order something he hoped to achieve shortly after acquiring the facility – "less expensive remedial and monitoring provisions." (Appellant's Brief at 42). However, this argument is nothing more than a challenge to the Compliance Plan itself and the decisions of the TCEQ. Only the TCEQ has jurisdiction to consider amendments to the Compliance Plan. It is not within the District Court's jurisdiction to consider such requests and the District Court properly disregarded

Morello's attempts to contravene the TCEQ's decisions and the administrative process.

Section XII.D of the Compliance Plan restates the procedures for amending the plan. (CR 777-778); *see also* 30 Tex. Admin. Code Chapter 305, Subchapter D (Amendments, Renewals, Transfers, Corrections, Revocation, and Suspension of Permits), and specifically § 305.69 (Solid Waste Permit Modification at the Request of the Permittee). The Compliance Plan was transferred to White Lion upon a request to transfer that was signed by Morello in May 2004. (CR 791-807). As evidenced by his letter to TCEQ in July 2004, Morello was aware of the procedures to amend and deliberately choose to ignore those procedures for over a decade. (CR 821-822).

To properly amend the Compliance Plan or challenge the TCEQ's denial of a request to amend, Morello/White Lion must exhaust the administrative remedies to challenge an agency action, something Morello (or White Lion) never did or even started. Here, Morello transferred the Compliance Plan to his company in 2004, and neither White Lion nor Morello ever challenged the issuance of the Compliance Plan nor sought to amend the Compliance Plan in accordance with the TCEQ's rules and the Administrative Procedures Act. Instead, both parties just ignored the Compliance Plan for as long as possible.

Morello's collateral attack on the Compliance Plan and the remedy set forth within is improper and the District Court was without jurisdiction to consider such argument. Recognizing this, the District Court was correct in denying the motion for new trial.  (CR 1767).

# CONCLUSION AND PRAYER

The liability shield normally afforded to corporate representatives is rightfully inapplicable in circumstances such as these, wherein a corporate representative personally causes and allows his company to flagrantly violate environmental laws for over a decade. After suit was filed in this case, Morello personally removed critical components to a groundwater monitoring and treatment system in violation of laws and of the Compliance Plan that Morello knew about and knew were the subject of a pending suit against him and his company. The District Court did not commit any error in this case – it properly granted summary judgment against Morello and properly denied his motion for new trial. Some 20 months before he first complained about it, the District Court also properly severed Morello's case from that of his company after the court had granted summary judgment against his company. Morello's late attempt to pack the record with a report prepared by a consultant after summary judgment was entered against Morello demonstrates nothing more than Morello's continuing desperate refusal to acknowledge the continuing obligations to manage contaminated groundwater at the facility. The District Court properly declined to consider the "new report."

The State respectfully asks this court to affirm the District Court's judgment in all respects.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney Gen. for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

*/s/ Craig J. Pritzlaff*_____
CRAIG J. PRITZLAFF
Assistant Attorney General
State Bar No. 24046658
craig.pritzlaff@texasattorneygeneral.gov

LINDA B. SECORD
Assistant Attorney General
State Bar No. 17973400
linda.secord@texasattorneygeneral.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Fax: (512) 320-0911


ATTORNEYS FOR APPELLEE,
THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

I certify that the computer program used to prepare this document reported that there are 12,858 words in the pertinent parts of the document in accordance with TRAP 9.4(i)(2).

*/s/ Craig J. Pritzlaff*_____
CRAIG J. PRITZLAFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2015 a true and correct copy of the foregoing *Brief of Appellee State of Texas* has been served on the following counsel by e-service and e-mail.

Keith W. Lapeze
Taylor L. Shipman
Lapeze & Johns, PLLC
601 Sawyer Street, Suite 650
Houston, Texas 77007
keith@lapezejohns.com
taylor@lapezejohns.com

Attorneys for Appellant

*/s Craig J. Pritzlaff*_____
CRAIG J. PRITZLAFF